**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| JOHN W. GRIFFITHS, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| AVIVA LONDON ASSIGNMENT CORPORATION, AVIVA LIFE INSURANCE COMPANY, CGU INTERNATIONAL INSURANCE, plc, ATHENE HOLDING, LTD, ATHENE LONDON ASSIGNMENT CORPORATION and ATHENE ANNUITY AND LIFE COMPANY, | ) ) ) ) ) ) ) ) ) | Civil Action No. 1:15-cv-13022-NMG |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Joel S. Feldman (*pro hac vice*)
Hille R. Sheppard (*pro hac vice*)
Daniel C. Craig (*pro hac vice*)
One South Dearborn Street
Chicago, Illinois  60603
Telephone:  (312) 853-7000
Jack W. Pirozzolo, BBO # 564879
60 State Street, 36th Floor
Boston, Massachusetts 02109
Telephone:  (617) 223-0304

*Attorneys for Defendants Aviva London
Assignment Corporation, Aviva Life
Insurance Company, Athene Holding, Ltd.,
Athene London Assignment Corporation, and
Athene Annuity and Life Company*

November 16, 2015

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

SUMMARY OF FACTS .......................................................................................2

    A.    The Parties .........................................................................................2

    B.    Mr. Griffiths' Original Personal Injury Lawsuit, And Settlement Agreement, Dated December 5, 2001 .....................................................2

    C.    Mr. Griffiths' Assignment And Pledge Agreement, Dated January 17, 2002.....................................................................................................3

    D.    Mr. Griffiths Receives A Letter Referencing The Capital Maintenance Agreement 16 Months Later, In April 2003 .............................................4

    E.    Mr. Griffiths Has Received All Payments Called For Under The Settlement Agreement...............................................................................5

LEGAL STANDARD.............................................................................................5

ARGUMENT ..........................................................................................................6

I.    THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(1) BECAUSE MR. GRIFFITHS LACKS ARTICLE III STANDING ...................6

    A.    The Legal Standard For Standing And Ability To Examine Extrinsic Evidence...............................................................................................6

    B.    Mr. Griffiths Cannot Establish Injury In Fact, Because It Is Impossible For Him To Have Overpaid For The Annuity .........................................7

    C.    Mr. Griffiths Cannot Satisfy The Injury Requirement By Alleging Threatened, Future Injury ........................................................................8

II.    THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6) BECAUSE MR. GRIFFITHS DOES NOT PLEAD ESSENTIAL ELEMENTS OF EACH OF HIS CLAIMS ....................................................10

    A.    Count I:  Mr. Griffiths Fails To State A Claim For Breach Of Contract..............10

    B.    Count II:  Mr. Griffiths Fails To State A Claim For Breach Of Fiduciary Duty....................................................................................................12

    C.    Count III:  Mr. Griffiths Fails To State A Claim For Promissory Estoppel .........13

    D.    Count IV:  Mr. Griffiths Fails To State A Claim For Unjust Enrichment .............14

CONCLUSION......................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Anderson v. Hannaford Bros. Co.*,
   659 F.3d 151 (1st Cir. 2011) ........................................................................5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................10

*Beddall v. State St. Bank & Trust Co.*,
   137 F.3d 12 (1st Cir. 1998) ..........................................................................2

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................10

*Best Place, Inc. v. Penn Am. Ins. Co.*,
   920 P.2d 334 (Haw. 1996) ..........................................................................12

*Bongaards v. Millen*,
   440 Mass. 10 (2003) ..................................................................................13

*Clapper v. Amnesty Int'l USA*,
   133 S. Ct. 1138 (2013) ................................................................................8

*Dynamic Image Techs., Inc. v. United States*,
   221 F.3d 34 (1st Cir. 2000) ..........................................................................6

*Feingold v. John Hancock Life Ins. Co.*,
   No. 13-cv-10185, 2013 WL 4495126 (D. Mass. Aug. 19, 2013) ...........................13

*Gonsalves v. Nissan Motor Corp. in Hawaii, Ltd.*,
   59 P.3d 1196 (Haw. 2002) ..........................................................................13

*Gonzalez v. United States*,
   284 F.3d 281 (1st Cir. 2002) ........................................................................2

*Katz v. Pershing, LLC*,
   672 F.3d 64 (1st Cir. 2012) .......................................................................5, 9

*Katz v. Pershing, LLC*,
   806 F. Supp. 2d 452 (D. Mass. 2011) ..........................................................2

*Liberty Mut. Ins. Co. v. Sumo-Nan LLC*,
   Civil No. 14-00520, 2015 WL 4093337 (D. Haw. July 6, 2015) ...........................14

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ....................................................................................6

*Mass Cash Register, Inc. v. Comtrex Sys. Corp.*,
    901 F. Supp. 404 (D. Mass. 1995) ...................................................................................10

*Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*,
    412 F.3d 215 (1st Cir. 2005) ..........................................................................................14

*McCue v. Prudential Ins. Co. of Am.*,
    371 Mass. 659 (1976) .....................................................................................................12

*Murphy v. United States*,
    45 F.3d 520 (1st Cir. 1995) ..............................................................................................5

*Okerman v. VA Software Corp.*,
    69 Mass. App. Ct. 771 (2007) .........................................................................................11

*Qestec, Inc. v. Krummenacker*,
    367 F. Supp. 2d 89 (D. Mass. 2005) ...............................................................................11

*Rapp v. Lester L. Burdick, Inc.*,
    336 Mass. 438 (1957) .....................................................................................................12

*Robainas v. Metro. Life Ins. Co.*,
    No. 14cv9926, 2015 WL 5918200 (S.D.N.Y. Oct. 9, 2015) .....................................................9

*Ruiz Rivera v. Pfizer Pharms., LLC*,
    521 F.3d 76 (1st Cir. 2008) .............................................................................................10

*Scott v. Pasadena Unified Sch. Dist.*,
    306 F.3d 646 (9th Cir. 2002) ............................................................................................9

*Szymanski v. Boston Mut. Life Ins. Co.*,
    56 Mass. App. Ct. 367 (2002) .........................................................................................12

*Thrivent Fin. for Lutherans v. Strojny*,
    882 F. Supp. 2d 260 (D. Mass. 2012) .............................................................................13

*Velez v. Bank of New York Mellon*,
    No. CIV.10-00468, 2011 WL 572523 (D. Haw. Feb. 15, 2011) ...........................................10

*Yarbough v. AXA Equitable Life Ins. Co.*,
    No. 15-cv-2585, 2015 WL 6792225 (S.D.N.Y. Oct. 22, 2015)................................................9

## <u>INTRODUCTION</u>

Plaintiff John W. Griffiths has sued several insurance companies for alleged breach of contract, breach of fiduciary duty, promissory estoppel, and unjust enrichment.  All of Plaintiff's claims revolve around the cancellation of a so-called Capital Maintenance Agreement ("CMA"), wherein a second insurance company states that it will maintain sufficient capital in an insurance company to allow it to satisfy certain obligations.  According to Mr. Griffiths, his annuity would have been worth less money at the time of purchase without the CMA.  Plaintiff premises all of his claims on the presumption that the price paid for his annuity included value for the CMA.

Three key facts preclude Plaintiff's Complaint from moving forward.  First, while Mr. Griffiths anchors his claims on the existence of the CMA at the time of purchase, the CMA transmittal letter he references in his Complaint was not sent until some 16 months later, in April 2003.  Second, as his contracts make clear, Mr. Griffiths did not purchase an annuity.  Third, Mr. Griffiths has received each and every monthly payment to which he is entitled.

The Complaint should accordingly be dismissed for two reasons.  First, the Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction because Mr. Griffiths lacks any injury sufficient to confer standing under Article III of the Constitution.  The Complaint makes clear that he has been paid *all* amounts owed, and any injury from the termination of the CMA is either implausible or speculative.  Second, the non-existence of the CMA at the time of the purchase transaction, along with other facts, means that Mr. Griffiths cannot allege numerous essential elements for each of his claims, as required by Federal Rule of Civil Procedure 12(b)(6).

## SUMMARY OF FACTS[1]

### A.     The Parties

Although Mr. Griffiths purports to sue six separate companies, there actually are only

four defendants.  Aviva London Assignment Corporation is now known as Athene London

Assignment Corporation ("Aviva London"), and Aviva Life Insurance Company is now known

as Athene Annuity and Life Company ("Aviva Life").  The other two defendants are Athene

Holding, Ltd. ("Athene"), which became the indirect corporate parent of Aviva London and

Aviva Life pursuant to a transaction in 2013; and CGU International Insurance, plc ("CGUII"),

which was the indirect corporate parent of those companies prior to the Athene transaction in

2013.

### B.     Mr. Griffiths' Original Personal Injury Lawsuit, And Settlement Agreement, Dated December 5, 2001

In 2001, Mr. Griffiths and the City and County of Honolulu ("Honolulu") settled a

personal injury lawsuit, and entered into a settlement agreement ("Settlement Agreement"),

attached as Exhibit 1 to the accompanying Declaration of Daniel Craig.[2]  In the Settlement

Agreement, Honolulu agreed to pay Mr. Griffiths a lump-sum payment of $200,000, as well as

---

[1] The Court may consider the underlying contracts and the letter concerning the CMA without converting the motion to dismiss into a motion for summary judgment because they are "linked" to the allegations in the Complaint.  *See Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998).  In addition, as explained in further detail below, "[a] court is permitted to look beyond the pleadings to determine jurisdiction on a 12(b)(1) motion"; doing so does not convert the motion into one for summary judgment.  *Katz v. Pershing, LLC,* 806 F. Supp. 2d 452, 456 (D. Mass. 2011); *see also Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002).

[2] Mr. Griffiths, his counsel in his personal injury case, and Honolulu signed the Settlement Agreement on December 5, 2001.  Mr. Griffiths and Honolulu also signed a second settlement agreement in January 2002, which is attached as Exhibit 2.  The second settlement agreement added certain language concerning a security interest in an event of default, but did not differ with respect to the terms described herein and did not reference the CMA.

payments of $3,150.00 per month for life beginning on January 1, 2007, and $1,975.50 per month for life beginning on January 1, 2012.  *Id.* ¶¶2.1, 2.2.

The Settlement Agreement provided that Honolulu could assign its obligation to make the monthly payments to Aviva London.[3]  *Id.* ¶5.1.  The Settlement Agreement also provided that Honolulu (or Aviva London) could fund the obligation to make the monthly payments by purchasing an annuity policy from Aviva Life.[4]  *Id.* ¶6.0.  It further stated that Honolulu (or Aviva London) – *not* Mr. Griffiths – would be the sole owner of any such annuity policy and would have all rights of ownership.  *Id.*  The Settlement Agreement did not make any reference to the CMA.

### C.      Mr. Griffiths' Assignment And Pledge Agreement, Dated January 17, 2002

On or around January 17, 2002, Mr. Griffiths, his counsel in his personal injury case, Honolulu, and Aviva London[5] signed a Qualified Assignment and Pledge Agreement ("Assignment and Pledge Agreement"), attached as Exhibit 3.  This is the only contract that Mr. Griffiths has with any of the defendants.  Under the terms of the Assignment and Pledge Agreement, Honolulu assigned, and Aviva London assumed, Honolulu's obligation to make the monthly payments set forth in the Settlement Agreement.  *Id.* ¶1.  Mr. Griffiths accepted and consented to the assignment.  *Id.*  The Assignment and Pledge Agreement further provided that

---

[3] The Settlement Agreement referred to CGU Annuity Service Corporation ("CGU Annuity"), however as Plaintiff effectively concedes the assignee was later changed to Aviva London.  For simplicity, Defendants will refer to CGU Annuity as Aviva London.

[4] The Settlement Agreement referred to CGU Life Insurance Company of America, which was a predecessor of Aviva Life.

[5] The Assignment and Pledge Agreement was actually signed by CGU Annuity, however Aviva London was later substituted as the entity that owed the obligations to Mr. Griffiths.  *See supra*, note 3.

Aviva London would fund the monthly payments by purchasing an annuity from Aviva Life[6]

(the "Annuity"). *Id.* ¶6. The Assignment and Pledge Agreement expressly provided that "[a]ll

rights of ownership and control of the Annuity shall be and remain vested in [Aviva London]."[7]

*Id.* The Assignment and Pledge Agreement further provided that, except for a security interest

provided to Mr. Griffiths with respect to certain events of default, Mr. Griffiths "shall have *no*

*rights* (including rights as third party beneficiary) under or interest in such Annuity or the

payments made thereunder." *Id.* (emphasis supplied). The Assignment and Pledge Agreement

made no reference to the CMA.

### D.      Mr. Griffiths Receives A Letter Referencing The Capital Maintenance Agreement 16 Months Later, In April 2003

Approximately 16 months after Mr. Griffiths signed the Settlement Agreement and more

than 14 months after he signed the Assignment and Pledge Agreement, Mr. Griffiths was sent a

letter dated April 9, 2003, which is attached as Exhibit 4 and excerpted in paragraph 24 of the

Complaint ("2003 Letter"). The 2003 Letter "confirm[ed]" that Aviva London had entered into

the CMA with CGUII. *Id.* It also stated that, "under the terms of the [CMA]," CGUII had

agreed "to maintain sufficient capital in [Aviva London] to ensure that it has the necessary funds

available to satisfy all structured settlement obligations assigned to and assumed by [Aviva

London] during the term of the [CMA]," and that "the foregoing obligation shall be absolute,

unconditional, present and continuing." *Id.* Mr. Griffiths was not a party to the CMA, nor does

he claim that he was owed any money as a result of the CMA between these two companies.

---

[6] The Assignment and Pledge Agreement referred to CGU Life Insurance Company of America, which was a predecessor of Aviva Life. *See supra,* note 4.

[7] There were certain exceptions which are not relevant here. *Id.*

4

The CMA was terminated when Aviva London was purchased by Athene and CGUII ceased to be Aviva London's indirect corporate parent.  *See* Compl. ¶28.

### E.     Mr. Griffiths Has Received All Payments Called For Under The Settlement Agreement

Pursuant to the terms of the Settlement Agreement, Aviva London made monthly payments of $3,150.00 to Mr. Griffiths beginning on or around January 1, 2007, and monthly payments of $1,975.50 beginning on or around January 1, 2012.  Mr. Griffiths alleges that a payment due to him "was missed," likely in 2014.  (Compl. ¶28.)  Aside from this payment, which he did receive after updating his information on file, Mr. Griffiths does not allege that he failed to receive any payment due to him on time and paid in full.

### LEGAL STANDARD

In reviewing a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), a court should "construe the complaint liberally and treat all well-pleaded facts as true, according the plaintiff the benefit of all reasonable inferences."  *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995).  To survive a motion to dismiss, a complaint must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  *Anderson v. Hannaford Bros. Co.*, 659 F.3d 151, 157 (1st Cir. 2011).  A plaintiff "may not rest merely on unsupported conclusions or interpretations of law," and "subjective characterizations or conclusory descriptions of a general scenario which *could* be dominated by unpleaded facts will not defeat a motion to dismiss."  *Murphy*, 45 F.3d at 522 (emphasis in original).  "When a court is confronted with motions to dismiss under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6), it ordinarily ought to decide the former before broaching the latter."  *Katz v. Pershing, LLC*, 672 F.3d 64, 76 (1st Cir. 2012)

## ARGUMENT

## I.      THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(1) BECAUSE MR. GRIFFITHS LACKS ARTICLE III STANDING

### A.      The Legal Standard For Standing And Ability To Examine Extrinsic Evidence

A plaintiff must establish three elements to satisfy the burden of proving standing to bring a claim in federal court.  First, "the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotation marks omitted).  Second, "there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendants and not the result of the independent action of some third party not before the court." *Id*. (internal quotation marks omitted).  Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. (internal quotation marks omitted).

In considering a motion under Rule 12(b)(1) challenging a plaintiff's standing to bring suit in federal court, the court "may consider extrinsic materials and, to the extent it engages in jurisdictional factfinding, is free to test the truthfulness of the plaintiff's allegations" without converting the motion to dismiss into a motion for summary judgment. *Dynamic Image Techs., Inc. v. United States*, 221 F.3d 34, 37-38 (1st Cir. 2000).

As discussed below, Plaintiff cannot satisfy the first and most fundamental element required for standing:  an injury in fact.  There is, accordingly, no need to examine the second and third elements required for standing.

B.      **Mr. Griffiths Cannot Establish Injury In Fact, Because It Is Impossible For Him To Have Overpaid For The Annuity**

Mr. Griffiths' injury, according to the Complaint, stems from his having paid a higher price for the annuity because of the CMA, with the termination of the CMA depriving him of a benefit for which he paid consideration.  "The Guaranteed Annuities commanded a higher price … because the financial strength of the CMA Guarantee …."  (Compl. ¶3; *see also id.* ¶33.)  The Complaint and the documents on which the Complaint depends and to which it is linked establish that this is an impossibility for two reasons.

First, the Complaint does not, and cannot, allege that the CMA was in place when Mr. Griffiths signed the Settlement Agreement or at the time Aviva London purchased the annuity to fund the obligation to make payments to Mr. Griffiths.  To the contrary, the quoted reference to the CMA, found in paragraph 24 of the Complaint, stems from a letter sent to Mr. Griffiths 16 months after his Settlement Agreement and annuity transaction, on April 9, 2003.  Absent an allegation that the CMA was in place in December 2001, or at the time of the January 2002 Assignment and Pledge Agreement, it is simply impossible for Mr. Griffiths to have overpaid based on a non-existent CMA.

Second, the evidence shows that Mr. Griffiths has not purchased an annuity, nor did he pay any consideration whatsoever to any defendant, notwithstanding the Complaint's general averments that he paid "higher prices" and unspecified consideration.  The Complaint does not specifically allege that Mr. Griffiths paid any money to any defendant at any time, and in fact he did not.  The Settlement Agreement shows that Honolulu or Aviva London, and not Mr. Griffiths, would be the sole owner of any annuity that would pay him an income stream.  Ex. 1 ¶6.0.  And the only contract Mr. Griffiths has with any of the defendants is his Assignment and Pledge Agreement, which simply states that Aviva London would fund the monthly

7

payments by purchasing an annuity from Aviva Life.  Ex. 3 ¶6.  In sum, because Mr. Griffiths

neither purchased nor ever owned any annuity, he cannot have overpaid for an annuity, and

cannot have incurred any injury.

### C.  Mr. Griffiths Cannot Satisfy The Injury Requirement By Alleging Threatened, Future Injury

The standard for satisfying the standing injury requirement based on threatened, future

injury is exceedingly high.  "[T]hreatened injury must be *certainly impending* to constitute injury

in fact.… Allegations of *possible* future injury" are not sufficient.  *Clapper v. Amnesty Int'l USA*,

133 S. Ct. 1138, 1147 (2013) (emphases in original).  Plaintiff's claim that there is "no guarantee

that … the promised annuity payments will be secure …" (Compl. ¶36) falls far short of this

standard.

The Complaint does not and cannot allege that Mr. Griffiths faces a "certainly

impending" threat of missed, delayed, or partial payments owed to him.  Mr. Griffiths does not

allege that Aviva Life, which is responsible for making the payments to Mr. Griffiths, is

financially troubled, let alone that it is at risk of failing.  No such allegation could be plausible.

Aviva Life was recently assigned an "A-" rating with an outlook of "stable" by Standard &

Poor's, which noted "Athene's very strong capital adequacy."[8]  Another ratings agency, A.M.

Best, likewise recently upgraded Aviva Life to an "a-" rating with an outlook of "stable" based

on, among other things, "additional cash capital contributed to the company in April 2015."[9]

---

[8] STANDARD & POOR'S RATINGS SERVICES, RESEARCH UPDATE: ATHENE HOLDING LTD. AND SUBSIDIARIES ASSIGNED RATINGS; OUTLOOK STABLE (Nov. 25, 2014), *available at* http://atheneannuity.com/wp-content/uploads/2015/04/RatingsDirectAtheneUpdate.pdf (last visited Nov. 12, 2015).

[9] A.M. BEST UPGRADES RATINGS OF ATHENE USA GROUP'S MEMBERS (April 21, 2015), *available at* http://www3.ambest.com/ambv/bestnews/presscontent.aspx?altsrc=3&refnum=22483 (last visited Nov. 12, 2015).

The Complaint instead alleges that, without the CMA, "the risk of default or late payment is materially higher than the risk profile Plaintiffs purchased and paid for, which reflected the CMA Guarantee." (Compl. ¶6.) But this is not sufficient to confer Article III standing. Numerous courts hold that allegations that a plaintiff faces unspecified increased risk are no substitute for establishing that he faces a certainly impending injury. For instance, in *Ross v. AXA Equitable Life Insurance Company*, the court dismissed for lack of standing where the plaintiffs contended that they had paid premiums for life insurance policies that were less financially secure than the defendant had represented them to be, and that they faced increased risk as a result. No. 14-cv-2904, 2015 WL 4461654, at *5 (S.D.N.Y. July 21, 2015). The court found that such "conclusory allegations of current risk do not suffice to confer Article III standing." *Id.* at *10. The court explained that "any risk of harm that [the plaintiffs] face is a risk of harm in the *future* – namely, the risk that [the defendant insurance company] ... will be unable to pay Plaintiffs' claims when they are eventually made. But to the extent Plaintiffs allege such a theory of injury, that possibility is far too hypothetical, speculative, and uncertain to constitute an 'imminently threatened injury' worthy of federal judicial intervention." *Id.*; s*ee also Katz*, 672 F.3d at 80 (no Article III standing where the plaintiff alleged she faced an increased risk of unauthorized access to her personal data as a result of defendant's allegedly faulty security practices).[10]

---

[10] *See also Yarbough v. AXA Equitable Life Ins. Co.*, No. 15-cv-2585, 2015 WL 6792225, at *1 (S.D.N.Y. Oct. 22, 2015) (no Article III standing where the plaintiff alleged that he paid premiums for insurance products that were "less financially secure than [the defendant] represented them to be"); *Robainas v. Metro. Life Ins. Co.*, No. 14cv9926, 2015 WL 5918200, at *6 (S.D.N.Y. Oct. 9, 2015) (rejecting theory of injury that the plaintiffs "purchased policies that were riskier than [the defendants] represented them to be" as insufficient to confer Article III standing); *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 656 (9th Cir. 2002) (a plaintiff may establish standing by pleading future injury only if the plaintiff is in danger of sustaining direct injury which is both real and immediate, not conjectural or hypothetical).

Mr. Griffiths' allegations in this case are parallel to those of the plaintiffs in *Ross*.  He

alleges, as they did, that he faces some additional risk that he will not be paid in the future, but

that risk is simply too speculative to confer Article III standing.  Accordingly, the Complaint has

failed to allege any injury sufficient to confer standing, and should be dismissed for lack of

jurisdiction.

## II.    THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6) BECAUSE MR. GRIFFITHS DOES NOT PLEAD ESSENTIAL ELEMENTS OF EACH OF HIS CLAIMS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim of

relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That

is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, ...

on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.*

at 555-56 (citations omitted).  "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).  Dismissal is

appropriate if the facts as alleged do not "possess enough heft to show that plaintiff is entitled to

relief."  *Ruiz Rivera v. Pfizer Pharms., LLC,* 521 F.3d 76, 84 (1st Cir. 2008) (alterations omitted)

(internal quotation marks omitted).

### A.    Count I:  Mr. Griffiths Fails To State A Claim For Breach Of Contract

In Massachusetts, "[t]o recover damages in a breach of contract claim, the plaintiff must

prove the existence of a valid binding agreement, the defendant's breach thereof, and damages

resulting from the breach."  *Mass Cash Register, Inc. v. Comtrex Sys. Corp.*, 901 F. Supp. 404,

415 (D. Mass. 1995).  Valid consideration must be present for a binding contract to exist.  *Id.*[11]

---

[11] Similarly, in Hawaii, a breach of contract claim is insufficient where it fails to "identify (1) the
contract at issue; (2) the parties to the contract; (3) whether [plaintiff] performed under the

Mr. Griffiths has failed to state a claim for breach of contract for three separate reasons, each of which requires that Count I be dismissed.  First, as described above, the Complaint fails to allege that Mr. Griffiths has suffered any cognizable damages.

Second, Mr. Griffiths fails to allege that the 2003 Letter was part of a valid, binding agreement with any of the defendants.  Although the Complaint alleges that "Plaintiff Griffiths' contract, and those of all members of the Proposed Class, included the CMA Guarantee" (Compl. ¶56), the Complaint does not identify the contract that supposedly included such a guarantee.  As shown above, the CMA was not included in (or even mentioned by) the Settlement Agreement or the Assignment and Pledge Agreement that Mr. Griffiths signed.  The Court should not credit the Complaint's conclusory allegation that the "CMA Guarantee" was included in an unnamed and undescribed contract.

Third, to the extent Mr. Griffiths' theory is that the 2003 Letter somehow amended his contract,[12] the Complaint does not allege that such amendment was supported by any consideration from Mr. Griffiths.  "A valid contract modification requires mutual assent and consideration."  *Okerman v. VA Software Corp.*, 69 Mass. App. Ct. 771, 781 (2007) (*citing Gishen v. Dura Corp.*, 362 Mass. 177, 182-83 (1972)).  Mr. Griffiths does not allege that he paid any funds around the time the letter was sent to him in exchange for the "CMA Guarantee," or that his benefits were reduced in any way.  Thus, Mr. Griffiths' claim for breach of contract must be dismissed for this reason as well.

---

contract; (4) the particular provision of the contract allegedly violated by [defendant]; (5) when and how [defendant] allegedly breached the contract; or (6) how Plaintiff was injured."  *Velez v. Bank of New York Mellon*, No. CIV.10-00468, 2011 WL 572523, at *3 (D. Haw. Feb. 15, 2011).

[12] The only contract Mr. Griffiths had with any of the defendants was the Assignment and Pledge Agreement with Aviva London.  Mr. Griffiths had no contract with Aviva Life, CGUII, or Athene.

**B.     Count II:  Mr. Griffiths Fails To State A Claim For Breach Of Fiduciary Duty**

Mr. Griffiths also asserts a claim for breach of fiduciary duty.  In Massachusetts, "a claim for breach of fiduciary duty has four elements:  1) existence of a fiduciary duty arising from a relationship between the parties, 2) breach of that duty, 3) damages and 4) a causal relationship between the breach and the damages."  *Qestec, Inc. v. Krummenacker*, 367 F. Supp. 2d 89, 97 (D. Mass. 2005).  As discussed above, Mr. Griffiths has failed to allege damages, and therefore fails to state a claim for breach of fiduciary duty.

The Complaint also fails to state a claim for breach of fiduciary duty because no fiduciary relationship existed between Mr. Griffiths and any defendant.  The Complaint includes a series of unsupported assertions, including that "[t]he law governing the business of insurance demands that the interests of policyholders be placed first; that the letter and spirit of all insurance laws and regulations be followed; and that *every* fact essential to a decision to purchase *any* insurance product – including annuities – be accurately and completely presented to their customers." (Compl. ¶62 (emphasis in original).)  It avers that these alleged rules show that "insurers bear an elevated level of responsibility to their customers that is fiduciary in nature."  *Id.*

Mr. Griffiths' theory that insurers are presumed to bear a fiduciary responsibility to the insured is directly contrary to Massachusetts law.  In Massachusetts, "[t]he relationship of insurer and policy holder does not entail a fiduciary duty absent special circumstances of assertion, representation, and reliance."  *Szymanski v. Boston Mut. Life Ins. Co.*, 56 Mass. App. Ct. 367, 381-82 (2002) (finding no fiduciary duty where insurer sought business from policyholder and policyholder averred that he told the insurer that he was relying on its advice); *see also Rapp v. Lester L. Burdick, Inc.*, 336 Mass. 438, 442-43 (1957) (finding no special circumstances of assertion, representation, and reliance where insurance agent solicited

12

individuals who had no prior business with the insurer); *compare McCue v. Prudential Ins. Co. of Am.*, 371 Mass. 659, 661-62 (1976) (finding that a jury could properly have found that an insurer owed a fiduciary duty to a policyholder because a continuing relationship existed between them for a period of 28 years, during which time the insurer's agents made monthly visits to the policyholder to attend to her insurance needs, the insurer corresponded directly with the policyholder's doctor, and the insurer's agent told the policyholder that he would contact her doctor to expedite submission of a required report).[13]  Special circumstances that may give rise to a fiduciary relationship between insurer and insured include the existence of a "continuing relationship of trust and confidence" or "where there is reliance by the insured on the insurer's agent for advice and guidance on the insured's policies." *Feingold v. John Hancock Life Ins. Co.*, No. 13-cv-10185, 2013 WL 4495126, at *15, *15 n.37 (D. Mass. Aug. 19, 2013); *Thrivent Fin. for Lutherans v. Strojny*, 882 F. Supp. 2d 260, 267 (D. Mass. 2012).  Mr. Griffiths has alleged no such circumstances here, and thus has failed to meet his burden of showing that a fiduciary relationship existed.  His claim for breach of fiduciary duty should be dismissed.

### C.    Count III:  Mr. Griffiths Fails To State A Claim For Promissory Estoppel

In Massachusetts, the elements of promissory estoppel are "(1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission." *Bongaards v. Millen*, 440 Mass. 10, 15 (2003).[14]

---

[13] Similarly, in Hawaii no fiduciary relationship exists between an insurer and insured except where the insurer is acting as the insured's agent. *See Best Place, Inc. v. Penn Am. Ins. Co.*, 920 P.2d 334, 344 (Haw. 1996).

[14] In Hawaii, "the four elements of promissory estoppel are:  (1) There must be a promise; (2) The promisor must, at the time he or she made the promise, foresee that the promisee would rely upon the promise (foreseeability); (3) The promisee does in fact rely upon the promisor's promise; and (4) Enforcement of the promise is necessary to avoid injustice." *Gonsalves v.*

Mr. Griffiths alleges that he relied on the promise of the CMA in purchasing structured settlement annuities from the defendants.  (Compl. ¶69.)  This allegation is implausible for two reasons.  First, Mr. Griffiths did not purchase any annuity from any defendant or any defendant's predecessor – he entered into the Settlement Agreement with Honolulu, which assigned its responsibility to make periodic payments to Aviva London, which in turn purchased the Annuity from Aviva Life.  Thus, the purchase of the Annuity cannot be Mr. Griffiths' act in reliance on the CMA, since Mr. Griffiths did not take that action.  Second, neither the Settlement Agreement nor the Assignment and Pledge Agreement made any reference to the CMA, and Mr. Griffiths did not receive the 2003 Letter until much later.

### D.      Count IV:  Mr. Griffiths Fails To State A Claim For Unjust Enrichment

In Massachusetts, the elements of a claim for unjust enrichment are "unjust enrichment of one party and unjust detriment to the other party."  *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 234 n.7 (1st Cir. 2005) (citations omitted).[15]  The Complaint alleges that Mr. Griffiths and those similarly situated "conferred a substantial benefit on [defendants] through his/their purchase of the structured settlement annuities that were secured by the CMA Guarantee."  (Compl. ¶74.)  Once again, however, Mr. Griffiths did not purchase any annuity, and he did not receive the 2003 Letter until long after he had entered into the Settlement Agreement and the Assignment and Pledge Agreement.  Because Mr. Griffiths does not allege that he ever made a supplemental payment or that he accepted a reduction in benefit at any time, he did not confer any benefit on any defendant with respect to the CMA.  No

---

*Nissan Motor Corp. in Hawaii, Ltd.*, 59 P.3d 1196, 1211-12 (Haw. 2002).

[15] In Hawaii, "[a]n unjust enrichment claim consists of two elements:  (a) receipt of a benefit without adequate legal basis by Defendants; and (b) unjust retention of that benefit at the expense of Plaintiffs."  *Liberty Mut. Ins. Co. v. Sumo-Nan LLC*, Civil No. 14-00520, 2015 WL 4093337, at *8 (D. Haw. July 6, 2015) (citation omitted).

defendant or its predecessor was enriched, unjustly or otherwise, by Mr. Griffiths with respect to the CMA.  The Complaint therefore fails to state a claim for unjust enrichment.

## **CONCLUSION**

For the reasons set forth above, the Complaint should be dismissed in its entirety and with prejudice.

Respectfully submitted,

Dated:  November 16, 2015          SIDLEY AUSTIN LLP


By: /s/ Joel S. Feldman
    Joel S. Feldman

    Joel S. Feldman (*pro hac vice*)
    jfeldman@sidley.com
    Hille R. Sheppard (*pro hac vice*)
    hsheppard@sidley.com
    Daniel C. Craig (*pro hac vice*)
    dcraig@sidley.com
    One South Dearborn Street
    Chicago, Illinois  60603
    Telephone:  (312) 853-7000
    Facsimile:  (312) 853-7036

    Jack W. Pirozzolo, BBO # 564879
    jpirozzolo@sidley.com
    60 State Street, 36th Floor
    Boston, Massachusetts 02109
    Telephone: (617) 223-0304
    Facsimile: (617) 223-0301

    *Attorneys for Defendants Aviva London*
    *Assignment Corporation, Aviva Life*
    *Insurance Company, Athene Holding, Ltd.,*
    *Athene London Assignment Corporation,*
    *and Athene Annuity and Life Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2015, a true and correct copy of the foregoing was served on counsel of record via the Court's CM/ECF system.


/s/ Jack W. Pirozzolo
Jack W. Pirozzolo