UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
JOHN W. GRIFFITHS, on behalf of :
himself and all others similarly situated,

           :

    Plaintiff,    Civil Action
         :  No. 15-13022-NMG
   v.
         :
AVIVA LONDON ASSIGNMENT
CORPORATION, AVIVA LIFE :
INSURANCE COMPANY, AVIVA
INTERNATIONAL INSURANCE LTD, :
f/k/a CGU INTERNATIONAL
INSURANCE, plc, ATHENE HOLDING, :
LTD, ATHENE LONDON
ASSIGNMENT CORPORATION and :
ATHENE ANNUITY AND LIFE
COMPANY,       :

    Defendants.  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT AVIVA INTERNATIONAL INSURANCE LIMITED'S
(FORMERLY CGU INTERNATIONAL INSURANCE, PLC)
<u>MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION</u>**

James R. Carroll
Michael S. Hines
Nicholas Ramacher
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800


Counsel for Defendant
Aviva International Insurance Limited

Dated:  January 22, 2016

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ...............................................................................................2

      A.     Griffiths' Claims Are Based On A Policy
             Purchased From, Serviced By, And Sold To Entities Other Than CGU .................2

      B.     CGU Is A Foreign Company With No Presence In Massachusetts ........................3

      C.     CGU Had No Dealings
             With Griffiths Or Any Annuity Holders In Massachusetts ....................................4

ARGUMENT ...................................................................................................................5

I.     THE COMPLAINT SHOULD BE DISMISSED AS TO CGU
       BECAUSE THE COURT LACKS PERSONAL JURISDICTION OVER CGU ..............5

      A.     CGU Is Not Subject To General Jurisdiction In Massachusetts .............................7

      B.     CGU Is Not Subject To Specific Jurisdiction In Massachusetts ............................8

          1.     Griffith's Claims Do Not Arise Out Of
                 Or Relate To Any Activities By CGU In Massachusetts .........................10

          2.     CGU Did Not Purposefully Avail Itself
                 Of The Protection Of Massachusetts Laws ...............................................13

          3.     Exercising Jurisdiction Over CGU Would Not Be Reasonable ................14

CONCLUSION ...............................................................................................................18

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

Ashcroft v. Iqbal,
   556 U.S. 662 (2009)…………………………………………………………..……2

Barrett v. H & R Block, Inc.,
   652 F. Supp. 2d 104 (D. Mass. 2009)………………………………..………………8, 9

Barrett v. Lombardi,
   239 F.3d 23 (1st Cir. 2001)……………………………………………………………..8

Bond Leather Co., Inc. v. Q.T. Shoe Manufacturing. Co., Inc.,
   764 F.2d 928 (1st Cir. 1985)……………………………………………………11, 12, 13, 14

Bridge Street Automotive, Inc. v. Green Valley Oil, LLC,
   985 F. Supp. 2d 96 (D. Mass. 2013)………………………………………………….…13

Daimler AG v. Bauman,
   134 S. Ct. 746 (2014)…………………………………………………………………...7

Federal Home Loan Bank of Boston v. Ally Financial, Inc.,
   No. 11-10952-GAO, 2014 WL 4964506 (D. Mass. Sept. 30, 2014)…………………………...7

Goodyear Dunlop Tires Operations, S.A. v. Brown,
   131 S. Ct. 2846 (2011)………………………………………………………………….7

Harlow v. Children's Hospital,
   432 F.3d 50 (1st Cir. 2005)…………………………………………………………10

Heliocopteros Nacionales de Colombia, S.A. v. Hall,
   466 U.S. 408 (1984)……………………………………………………………………8

Hoyos-Aliff v. Fomento de Construcciones y Contratas, S.A.,
   No. Civ. 04-1859CCC, 2006 WL 852065 (D.P.R. Mar. 28, 2006)…………………………...15

J. McIntyre Machinery, Ltd. v. Nicastro,
   131 S. Ct. 2780 (2011)……………………………………………………………….7

Martha's Vineyard Scuba Headquarters, Inc. v. McCluskie,
   922 F. Supp. 2d 150 (D. Mass. 2013)……………………………………………………16

Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n,
   142 F.3d 26 (1st Cir. 1998)………………………...………………………………..……9

Negron-Torres v. Verizon Communications, Inc.,
    478 F.3d 19 (1st Cir. 2007)……………………………………………………………..8

Pacific Atlantic Trading Co., Inc. v. M/V Main Express,
    758 F.2d 1325 (9th Cir. 1985)…………………………………………………....11, 12, 13

Phillips Exeter Academy v. Howard Phillips Fund, Inc.,
    196 F.3d 284 (1st Cir. 1999)……………………………………………………………8

Platten v. HG Bermuda Exempted Ltd.,
    437 F.3d 118 (1st Cir. 2006)……………………………………………………………….6

Rodriguez v. Samsung Electronics Co., Ltd.,
    827 F. Supp. 2d 47 (D. Mass. 2011)…………………………………….……..……13, 16

Sawtelle v. Farrell,
    70 F.3d 1381 (1st Cir. 1995)……………………………………………………….......*passim*

Ticketmaster - New York, Inc. v. Alioto,
    26 F.3d 201 (1st Cir. 1994)…………………………………………..……15, 16

United States v. Swiss American Bank, Ltd.,
    274 F.3d 610 (1st Cir. 2001)………………………………………………..…….6, 10, 11, 12

## PRELIMINARY STATEMENT

Defendant Aviva International Insurance Limited (formerly CGU International Insurance, plc, hereinafter "CGU") does not belong in this case.

Plaintiff John W. Griffiths, a resident of Hawaii, purports to assert claims against CGU, a company organized and based in the United Kingdom, for, among other things, breach of contract (Count I) and promissory estoppel (Count III).  The Complaint, however, contains no allegations -- nor could it -- that Griffiths (or any other putative class member) entered into any contract with CGU, that CGU made any "promises" to anyone, or that Griffiths had any dealings whatsoever with CGU.  Instead, Griffiths alleges that defendants Aviva London Assignment Corporation ("Aviva London") and Aviva Life Insurance Company ("Aviva Life") sold him an annuity that was "fully guaranteed under a capital maintenance agreement ('CMA')" between Aviva London and CGU.  (Am. Compl. ¶ 37.)[1]  Griffiths further alleges that when Aviva London and Aviva Life were subsequently acquired by Athene Holding Ltd., "the CMA automatically terminated in accordance with its original terms."  (Am. Compl. ¶ 50 (emphasis removed).)  Griffiths alleges that he and other putative class members "have sustained damages" as a "result of AVIVA's [not CGU's] unauthorized assignment" of the annuities.  (Am. Compl. ¶ 78.)

Based on those allegations, the Complaint should be dismissed because the Court lacks jurisdiction over CGU.  CGU is organized and based in the United Kingdom, and, at all relevant times, has not had any employees or offices in Massachusetts.  CGU is not a party to Griffiths' annuity policy or any of the annuity policies of the putative class members.  In addition,

---

[1]     Citations in the form "Am. Compl. ¶ __" are to the Amended Class Action Complaint dated December 18, 2015 (ECF No. 28).

CGU has never communicated with Griffiths or any of the putative class members concerning their annuities.

Griffiths alleges only a single contact between CGU and Massachusetts:  CGU entered into the CMA with Aviva London, a company headquartered in Massachusetts.  But a contract with a third party, without more, is inadequate as a matter of law to establish personal jurisdiction.  All of Griffiths' remaining allegations relate to the actions of other defendants, and Griffiths has made no allegations that those defendants' actions can be imputed to CGU.  Accordingly, all claims against CGU should be dismissed because there is no personal jurisdiction as to CGU.

## STATEMENT OF FACTS[2]

### A.   Griffiths' Claims Are Based On A Policy Purchased From, Serviced By, And Sold To Entities Other Than CGU

Griffiths' claims arise from a structured settlement annuity that benefits Griffiths, issued by Aviva Life on December 7, 2001.  (Cooper Decl. ¶ 4.)  Griffiths purports to represent a class of persons who purchased similar structured settlement annuities (the "Annuities").  The Annuities "were issued by AVIVA Life Insurance Company, and assigned to AVIVA LAC, so that payments on these annuities were to be made by AVIVA LAC."  (Am. Compl. ¶ 2.)  CGU neither sold nor serviced the Guaranteed Annuities.  (Cooper Decl. ¶ 17.)

On February 1, 2002, CGU signed the CMA in London, England with CGNU London Annuity Service Corp., the predecessor of Aviva London.  (Cooper Decl. ¶ 5.)  In

---

[2]    For purposes of this motion, CGU assumes, without conceding, the truth of the factual allegations in the Complaint.  Conclusory statements in the Complaint, however, are "not entitled to the assumption of truth."  Ashcroft v. Iqbal, 556 U.S. 662, 679-81 (2009).  Further, on motions to dismiss for lack of personal jurisdiction, the court may consider the parties' affidavits or declarations.  See, e.g., Sawtelle v. Farrell, 70 F.3d 1381, 1385 (1st Cir. 1995).  CGU submits the declaration of Kirstine Cooper in support of its motion to dismiss (cited as "Cooper Decl.").

connection with signing the agreement, CGU had no contact with Griffiths or any other putative

class member.  (Cooper Decl. ¶ 7.)  In a subsequent letter dated April 9, 2003, Griffiths was

informed of the CMA.  (Cooper Decl. Ex. A; Am. Compl. ¶ 43.)  CGU is not a signatory of the

letter, is not copied on the letter, and had no contact with Griffiths or any other member of the

putative class at that time.  (Cooper Decl. ¶ 9, Ex. A.)

        On October 2, 2013, Athene Holding Ltd. purchased Defendants Aviva Life and

Aviva London.  (Cooper Decl. ¶ 10.)  CGU, however, was not a party to the sale of Aviva Life

and Aviva London.  (Id.)  With the sale of Aviva Life and Aviva London, "the CMA

automatically terminated in accordance with its original terms."  (Am. Compl. ¶ 50 (emphasis

removed).)  Griffiths contends that he and other purported class members were injured by the

CMA's termination.

**B.**      **CGU Is A Foreign Company With No Presence In Massachusetts**

        CGU is organized under the laws of England and Wales (Am. Compl. ¶ 12), and

it has its headquarters in London, England.  (Cooper Decl. ¶ 11.)  It is the wholly-owned

subsidiary of Aviva plc, a holding company also organized under the laws of England and Wales.

(Cooper Decl. ¶ 12)

        CGU does not sell annuity policies in the United States, and it did not do so at any

time between December 2001, when Aviva Life issued the annuity at issue, and October 2013,

when the CMA terminated.  (Cooper Decl. ¶ 13.)  At all relevant times, CGU did not have any

employees, maintain an office, or pay taxes in Massachusetts.  (Cooper Decl. ¶ 14.)  CGU does

not and did not have bank accounts in Massachusetts, nor did it own or lease property in

Massachusetts.  (Id.)

        In addition, CGU observed, and continues to observe, its corporate separateness

from its parents, affiliates, and subsidiaries, including Defendants Aviva London and Aviva Life.

3

(Cooper Decl. ¶ 15.)  CGU owned or leased its own facilities, kept its own books and records, entered into contracts on its own, and paid its own taxes.  (Cooper Decl. ¶ 16.)  CGU maintains its own board of directors, which conducted meetings and kept minutes of such meetings.  (<u>Id.</u>)  In addition, prior to October 2013, Aviva London and Aviva Life handled their own day-to-day operations, including setting pricing for the annuity benefitting Griffiths and other members of the putative class.  (Cooper Decl. ¶ 17.)  CGU had no involvement in marketing, selling, paying, or setting rates for those annuities.  (<u>Id.</u>)

> ### C.   CGU Had No Dealings <br> With Griffiths Or Any Annuity Holders In Massachusetts

Griffiths does not allege that CGU had any contact with Griffiths or with any annuity holder in Massachusetts, and he alleges no facts that support any contacts by CGU with Massachusetts.  Rather, Griffiths alleges only that CGU "guaranteed the commercial paper programme and the related committed borrowing facilities of AVIVA plc," that CGU had "entered into [the CMA]" and would "maintain sufficient capital in AVIVA London Assignement to ensure that it has the necessary funds available to satisfy all structured settlement agreement obligations," and that "AVIVA . . . set forth in its uniform marketing materials and other documentation . . . that these annuity obligations were fully guaranteed under a [CMA] with its London affiliate Defendant CGU."  (Am. Compl. ¶¶ 12, 37, 43.)

Griffiths makes no allegations that even those limited actions occurred in Massachusetts, and in fact they did not.  CGU's guarantee of Aviva plc's "commercial paper programme" reflects an agreement between two companies that are created under and governed by the laws of England and Wales.  (<u>See</u> Cooper Decl. ¶¶ 11-12.)  CGU considered the terms of the CMA, received its corporate approvals for the CMA, and signed the CMA in London, England.  (Cooper Decl. ¶¶ 5-6.)

Griffiths also makes numerous allegations against "AVIVA," which he defines as Aviva London, Aviva Life, and CGU "collectively." But Griffiths rarely describes each entity's role or its connection to Massachusetts. In addition, Griffiths frequently uses "AVIVA" even where it is clear that CGU cannot be involved. For example, Griffiths alleges that the "CMA Guarantee," a letter to annuity-holders describing the CMA, was "sent by AVIVA from its offices at 108 Myrtle Street, North Quincy, MA, 02171." (Am. Compl. ¶ 38.) When that letter was sent, CGU had no office in North Quincy, or anywhere else in Massachusetts. (Cooper Decl. ¶ 14.) Similarly, Griffiths alleges that "AVIVA used this guarantee to enhance significantly the sales volume of the Guaranteed Annuities" (Am. Compl. ¶ 45), but Griffiths himself alleges that the "Guaranteed Annuities were issued by AVIVA Life Insurance Company," not all three entities. (Am. Compl. ¶ 2.)

At other times, Griffiths specifically distinguishes between "AVIVA" and CGU. For example, he alleges that "AVIVA sold [Guaranteed Annuities] to the public on the basis of a unique guarantee issued by an entity which AVIVA identified as AVIVA's indirect parent -- Defendant CGU." (Am. Compl. ¶ 2.) Griffiths similarly alleges that "the promise made by AVIVA to the purchasers of the Guaranteed Annuities was that Defendant CGU would guarantee all payments." (Am. Compl. ¶ 8.)

## ARGUMENT

### I.      THE COMPLAINT SHOULD BE DISMISSED AS TO CGU BECAUSE THE COURT LACKS PERSONAL JURISDICTION OVER CGU

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state." Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995) (Gorton, J., sitting by designation) (internal quotes omitted) (finding no personal jurisdiction in New Hampshire over

defendant law-firms because the plaintiffs' "claim for legal malpractice did not directly arise out of, nor was it related (in any meaningful way) to the law firms' contacts with New Hampshire. Moreover, the law firms' telephone communications and correspondence into the forum did not represent a 'purposeful availment' by the firms of the privilege of conducting business activities in New Hampshire").

CGU is a foreign corporation that is organized under the laws of England and Wales and has its principal place of business in London, England. (Cooper Decl. ¶ 11.) Because CGU is a foreign corporation, Griffiths must establish that Massachusetts' long-arm statute confers jurisdiction over CGU, and that "the Due Process Clause of the Fourteenth Amendment allows Massachusetts to exercise personal jurisdiction over" CGU. Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 135 (1st Cir. 2006). "The Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute as coextensive with the outer limits of the Constitution; thus, the only inquiry that remains is the constitutional one." Id.

Under the prima facie standard for analyzing a jurisdictional claim, Griffiths "bear[s] the burden of persuading the court that jurisdiction exists." Id. at 134. Griffiths "may not rely on unsupported allegations" in his Complaint, rather, he must "adduce evidence of specific facts." Id. Although a court takes the facts presented by the plaintiff as true, it "do[es] not credit conclusory allegations or draw farfetched inferences." Sawtelle, 70 F.3d at 1385-86. Finally, the Court must "add to the mix" any uncontradicted facts put forward by CGU. Platten, 437 F.3d at 134.

To establish jurisdiction, Griffiths must show that this Court has either general jurisdiction or specific jurisdiction over CGU. See United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). Griffiths cannot establish either type of personal jurisdiction.

A.     <u>**CGU Is Not Subject To General Jurisdiction In Massachusetts**</u>

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 131 S. Ct. 2846, 2851 (2011). Such contacts must be "constant and pervasive." <u>Daimler AG v. Bauman</u>, 134 S. Ct. 746, 751 (2014). <u>Goodyear</u> and <u>Daimler</u> make clear that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." <u>Id.</u> at 760. For foreign corporations like CGU, the "paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business." <u>Id.</u> at 749. Jurisdiction will only be available elsewhere in an "exceptional case." <u>Id.</u> at 761 n.19; <u>Fed. Home Loan Bank of Bos. v. Ally Fin., Inc.</u>, No. 11-10952-GAO, 2014 WL 4964506, at *2 (D. Mass. Sept. 30, 2014) (dismissing claims against foreign-state companies because "under the analytical framework expressed in <u>Daimler</u>, it is clear that they are not subject to personal jurisdiction in Massachusetts under a general jurisdiction approach").

As Griffiths admits, "CGU is a corporation formed under the laws of England and Wales" (Am. Compl. ¶ 12), and its principal place of business is London, England. (Cooper Decl. ¶ 11.) Griffiths makes no allegations that this is the "exceptional case" where general jurisdiction might otherwise apply. <u>See Daimler</u>, 134 S. Ct. at 761 n.19. Nor could he. CGU does not have any offices in Massachusetts; CGU does not conduct business in Massachusetts; CGU does not have any employees in Massachusetts; CGU does not pay taxes in Massachusetts; and CGU does not own any property in Massachusetts. (Cooper Decl. ¶ 14.) Absent such facts, Griffiths cannot establish general jurisdiction over CGU. <u>See J. McIntyre Mach., Ltd. v. Nicastro</u>, 131 S. Ct. 2780, 2790 (2011) (holding that a New Jersey court did not have jurisdiction

over a British manufacturer where the "British manufacturer had no office in New Jersey; it neither paid taxes nor owned property there; and it neither advertised in, nor sent any employees to, the State").

### B.   CGU Is Not Subject To Specific Jurisdiction In Massachusetts

Specific jurisdiction exists only if Griffiths' claims "arise out of or relate to [CGU's] contacts with [Massachusetts]." Heliocopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984).  To make this showing, Griffiths must satisfy three elements:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities.  Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001) (finding no jurisdiction over a company headquartered in the Cayman Islands where the plaintiff did not allege that the company "had conducted any business in Massachusetts or that it had any significant ties to the state").  "An affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction."  Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999).

Here, Griffiths cannot establish any of the three elements.  Griffiths' claims arise out of his policy and his communications with Aviva London, Aviva Life, and, eventually, the Athene Defendants.  But CGU was not a party to Griffiths' policy, and it did not communicate with him (or with other putative class members) (Cooper Decl. ¶¶ 7, 9), and the actions of a subsidiary or affiliate "do[] not confer jurisdiction over its nonresident parent . . . [t]here is a presumption of corporate separateness that must be overcome by clear evidence." Barrett v. H & R Block, Inc., 652 F. Supp. 2d 104, 115 (D. Mass. 2009) (quoting Negron-Torres v. Verizon

Communications, Inc., 478 F.3d 19, 27 (1st Cir. 2007)).  Here, Griffiths cannot impute the actions of Aviva Life and Aviva London to CGU through group pleading, and he has not alleged any facts to support piercing the corporate veil.[3]

Griffiths' conclusory allegation, "[o]n information and belief" that CGU entered into the CMA "with the express purpose and effect of increasing the value of annuities sold within Massachusetts and throughout the United States" (Am. Compl. ¶ 39) likewise does not support personal jurisdiction.  As an initial matter, Griffiths' conclusion is unsupported by any factual allegations, and courts "do not credit conclusory allegations" on a motion to dismiss. Sawtelle, 70 F.3d at 1385-86.  In addition, Griffiths does not allege CGU made any decisions related to the CMA in Massachusetts, only that its decisions had the "effect of increasing the value of annuities sold within Massachusetts."  (Am. Compl. ¶ 39.)  But the First Circuit has held that "the in-forum effects of extra-forum activities" -- here, the alleged increase in annuities' value -- cannot "constitute minimum contacts." Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 36 (1st Cir. 1998) (finding no personal jurisdiction over member of a committee that denied accreditation to a Massachusetts law school because the decision, although directed at a Massachusetts entity, was made in New York, and there were no other related contacts with Massachusetts).

---

[3]  Griffiths states that "Griffiths, the City of Honolulu, and two instrumentalities of CGU also executed a Qualified Assignment and Pledge Agreement."  (Am. Compl. ¶ 36.)  But he does not allege any facts to support the conclusory assertion that CGU Annuity Service Corporation and CGU Life Insurance Company of America -- the two companies listed on the Qualified Assignment and Pledge Agreement (Am. Compl. Ex. B) -- were "instrumentalities of CGU" and not independent entities.  Griffiths' conclusory allegation falls far short of the "clear evidence" needed to overcome the "presumption of corporate separateness." See Barrett v. H & R Block, 652 F. Supp. 2d at 115.

Therefore, the only contact that can be considered is the single contact that Griffiths specifically alleges as to CGU, namely, entering into the CMA with Aviva London (not with Griffiths).  That single contact is insufficient as a matter of law to establish relatedness, purposeful availment, or reasonableness.

### 1. Griffith's Claims Do Not Arise Out Of Or Relate To Any Activities By CGU In Massachusetts

To satisfy the relatedness element of specific jurisdiction, Griffiths' claims must "arise out of, or be related to, [CGU's] in-forum activities." Swiss Am., 274 F.3d at 621.  "[The First Circuit] steadfastly reject[s] the exercise of personal jurisdiction whenever the connection between the cause of action and the defendant's forum-state contacts seems attenuated and indirect." Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005).  Ignoring Griffiths' group pleading and conclusory assertions, Griffiths alleges only one contact between CGU and Massachusetts:  that Aviva London's "annuity obligations were fully guaranteed under a capital maintenance agreement ('CMA') with its London affiliate Defendant CGU."  (Am. Compl. ¶ 37.) That single alleged contact is insufficient as a matter of law to establish personal jurisdiction over CGU.  See Swiss Am., 274 F.3d at 621.

Swiss Am. makes clear that Griffiths must show more than a contract between CGU and Aviva London.  In that case, a Massachusetts resident forfeited $7 million in drug proceeds that was deposited in an Antiguan bank to the United States government as part of a plea agreement.  Id. at 615.  When the bank refused to turn over the funds, the government sued the bank, as the Massachusetts resident's successor-in-interest, for breach of contract, conversion, and unjust enrichment.  Id.  In response to a motion to dismiss for lack of personal jurisdiction, the government argued that the contract between the bank and the Massachusetts resident who

forfeited the account constituted minimum contacts with the United States.[4]  Id. at 621.  The First

Circuit held that the contract was "not itself a contact with the United States" because "[a]

contract, by itself, cannot establish minimum contacts."  Id. at 621 (emphasis original).  Citing

Sawtelle, 70 F.3d at 1389, the First Circuit explained that "a general relationship between the

parties," such as a contractual relationship, cannot establish relatedness; "the action must arise

out of specific contacts between the defendant and the forum."  Swiss Am., 274 F.3d at 621.  The

former account-holder opened the account in Antigua, however, and there were no other alleged

contacts with the United States, and so "the business relationship between [the bank] and [the

Massachusetts resident], which involves no in-forum activities," was not "a contact with the

forum for the purposes of the relatedness injury."  Id. at 622.

        This rule applies equally to guarantees, such as the CMA.  See Bond Leather Co.,

Inc. v. Q.T. Shoe Mfg. Co., Inc., 764 F.2d 928, 935 (1st Cir. 1985) ("[The defendant's] single

guaranty forged no substantial connection between it and the Commonwealth of

Massachusetts"); Pacific Atlantic Trading Co., Inc. v. M/V Main Express, 758 F.2d 1325, 1328-

29 (9th Cir. 1985).  Pacific Atlantic is instructive.  In that case, a San Francisco company agreed

to send a shipment of root beer to a Malaysian company as a partial settlement, negotiated in San

Francisco, of an unpaid debt.  758 F.2d at 1326.  The Malaysian company signed a letter of

guaranty indemnifying the shipping company, based in Germany, against any losses from

unloading the shipment.  Id.  The San Francisco company subsequently sued the shipping

company for conversion, and the shipping company sought indemnification from the Malaysian

company.  Id.  The court held that the indemnity agreement, which was signed in Malaysia, was

---

4       Because the government's claims arose under federal law, it only needed to establish
sufficient contacts with the United States.  Here, Griffiths must establish CGU had sufficient
contacts with Massachusetts.

"not in and of itself dispositive of the jurisdictional issue" and was not "related to the California forum." <u>Id.</u> at 1328-29.  Although there were prior negotiations between the Malaysian company and the San Francisco company in San Francisco, "the indemnity agreement . . . was executed as a separate transaction in Malaysia." <u>Id.</u> at 1328.  Thus, "the fact that [the Malaysian company] visited [the San Francisco company] in San Francisco or had prior dealings with [the San Francisco company] would only be relevant to the question of limited jurisdiction in a lawsuit by [the San Francisco company] against [the Malaysian company] on a specific transaction." <u>Id.</u> at 1329.

Here, the <u>only</u> alleged contact between CGU and Massachusetts is the CMA between CGU and Aviva London.  That single contact cannot establish minimum contacts.  <u>See Swiss Am.</u>, 274 F.3d at 621; <u>Bond Leather</u>, 764 F.2d at 934; <u>Pacific Atlantic</u>, 758 F.2d at 1328. In addition, like the indemnity agreement in <u>Pacific Atlantic</u>, the CMA was signed in a foreign country (England) and was "a separate transaction" from Griffiths' policy with Aviva London, and so cannot satisfy the relatedness requirement.  <u>See Id.</u> at 1329.  In fact, CGU's contacts with Massachusetts, to the extent they exist, have even less relation to Griffiths' claims than the guaranty in <u>Pacific Atlantic</u>.  Unlike the Malaysian defendant in that case, which initially negotiated the shipment with the San Francisco company and signed the guaranty to access the shipment it had negotiated as a partial settlement payment, CGU has never negotiated or otherwise communicated with Griffiths or any other putative class member concerning their annuity policies.  (Cooper Decl. ¶¶ 7, 9.)  Thus, Griffiths has not alleged that his claims "arise out of or relate to" CGU's contacts with Massachusetts.

### 2.    CGU Did Not Purposefully Avail Itself
#### Of The Protection Of Massachusetts Laws

Griffiths must show that CGU "purposefully and voluntarily direct[ed its] activities toward [Massachusetts] so that [it] should expect, by virtue of the benefits [it] receive[d], to be subject to the court's jurisdiction based on these contacts." Bridge St. Auto., Inc. v. Green Valley Oil, LLC, 985 F. Supp. 2d 96, 111 (D. Mass. 2013). "Voluntariness requires that the defendant's contacts with the forum state proximately result from actions by the defendant [it]self. . . . Foreseeability requires that the contacts also must be of a nature that the defendant could reasonably anticipate being haled into court there." Rodriguez v. Samsung Elecs. Co., Ltd., 827 F. Supp. 2d 47, 52 (D. Mass. 2011) (Gorton, J.) ("It defies reason to surmise that [the defendant], a Korean corporation with its principal place of business in Korea, reasonably foresaw that its supervision of operations at a plant in Korea would subject it to a tort suit in Massachusetts."). Because CGU's only alleged contact with Massachusetts is the CMA, Griffiths has also failed to allege purposeful availment. See Bond Leather, 764 F.2d at 934; Pacific Atlantic, 758 F.2d at 1328-29 (holding that a Malaysian company could not be sued by a German shipping company in California to enforce an indemnification agreement signed in Malaysia because "even though [the Malaysian company] could have anticipated that [the shipping company] would be sued . . . , and even though the indemnity agreement induced [the shipping company] to deliver the goods, absent sufficient contacts between [the Malaysian company] and the California forum, the indemnity agreement is not in and of itself dispositive of the jurisdictional issue").

Bond Leather explains the need for additional, intentional contacts with Massachusetts in order to establish purposeful availment. In that case, an Ohio company guaranteed a New Jersey manufacturer's line of credit from the manufacturer's Massachusetts-

based supplier.  764 F.2d at 930.  In negotiating the guarantee, the Ohio company's president took a call from the supplier's employee in Massachusetts to discuss terms, and the Ohio company sent four drafts of the guaranty letter, including the final version, to the supplier in Massachusetts.  Id.  In a subsequent suit related to the guaranty, the First Circuit "reject[ed the supplier's] argument that, solely by guaranteeing it payment for goods sold to [the manufacturer], and thereby inducing [the supplier] to sell goods, [the Ohio company] made a purposeful decision which is independently sufficient to support jurisdiction."  Id. at 934 (emphasis original).  Because there were "no supplemental contacts" with Massachusetts -- the Ohio company "had no presence in Massachusetts, no direct business dealings with parties there and no intent to initiate its own business dealings with [the manufacturer] or any other Massachusetts party" -- the First Circuit held that the Ohio company's Massachusetts contacts were "insufficient to satisfy the requirements of due process."  (Id. at 933-34.)

Here, like the plaintiff in Bond Leather, Griffiths has not alleged any "supplemental contacts" between CGU and Massachusetts.  CGU signed the CMA in London, England; CGU had no presence in Massachusetts; and CGU had no dealings with Griffiths or any other purported class member related to their policies.  (Cooper Decl. ¶¶ 5, 7, 9, 14.)  In fact, Griffiths has alleged even fewer contacts with Massachusetts than the Ohio company in Bond Leather, which sent four letters into Massachusetts and participated in a call with the Massachusetts company while negotiating the guaranty but still lacked minimum contacts.  764 F.2d at 930.  Griffiths alleges no similar action.  Griffiths therefore has not alleged purposeful availment with respect to CGU.

### 3.        Exercising Jurisdiction Over CGU Would Not Be Reasonable

Even if Griffiths had adequately pleaded relatedness and purposeful availment, he could not show that "the exercise of jurisdiction is reasonable under the circumstances."

Rodriguez, 827 F. Supp. 2d at 51.  The First Circuit has identified five considerations, termed the "gestalt factors," that a court must weigh when making its reasonableness determination:

> (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies.

Sawtelle, 70 F.3d at 1394.  Here, each of these factors counsels against jurisdiction.

**CGU's Burden of Appearing**.  Requiring CGU to defend this case in Massachusetts would be a substantial burden to it.  CGU is based in London, England and is governed by laws of England and Wales.  (Cooper Decl. ¶ 11.)  It has no offices or employees in Massachusetts.  (Cooper Decl. ¶ 14.)  Given CGU's limited contacts with Massachusetts, this factor weighs against finding jurisdiction over CGU.  See Ticketmaster - N.Y., Inc. v. Alioto, 26 F.3d 201, 210 (1st Cir. 1994) ("The burden associated with forcing a California resident to appear in a Massachusetts court is onerous in terms of distance . . . . This burden, and its inevitable concomitant, great inconvenience, are entitled to substantial weight in calibrating the jurisdictional scales."); Hoyos-Aliff v. Fomento de Construcciones y Contratas, S.A., No. Civ. 04-1859CCC, 2006 WL 852065, at *7 (D.P.R. Mar. 28, 2006) ("[S]ince [the defendant's] place of business is located in Barcelona, Spain, it truly would be a costly and burdensome task to defend itself in this forum . . . [with] its officers and employees having to incur in travel and lodging expenses to defend in a forum selected by plaintiffs. . . . This factor clearly tilts in favor of [the defendant].").

**Massachusetts' Interest in the Dispute**.  Griffiths is "a citizen and resident of the State of Hawaii."  (Am. Compl. ¶ 9.)  CGU is headquartered in London and is incorporated under the laws of England and Wales.  (Cooper Decl. ¶ 11.)  In addition, Griffiths has not alleged any actions taken by CGU in Massachusetts that caused him injury, or that his injury occurred in

15

Massachusetts.  Massachusetts therefore has little interest in resolving this dispute, weighing against the exercise of jurisdiction.  See Ticketmaster - N.Y., 26 F.3d at 211 ("[Massachusetts'] interest in the litigation sub judice is arguably lessened by the doubts surrounding whether defendant's act can be said to have been committed in the forum."); Martha's Vineyard Scuba Headquarters, Inc. v. McCluskie, 922 F. Supp. 2d 150, 156 (D. Mass. 2013) (finding that "Massachusetts ha[d] a de minimis interest in adjudicating" a dispute between a defendant in England and a plaintiff headquartered in New York, especially where "the effects of the injury will not even be felt in Massachusetts").

      **Griffiths' Interest in Obtaining Convenient and Effective Relief**.  Griffiths admits that he is a citizen and resident of Hawaii.  (Am. Compl. ¶ 9.)  As such, Massachusetts does not offer him more convenient and effective relief than would other forums.  In addition, even if CGU were dismissed from this action, Griffiths would still have claims -- to the extent they have merit -- against the remaining defendants who do not contest jurisdiction and who had significantly greater contacts with Griffiths.  See Rodriguez, 827 F. Supp. 2d at 53 (stating that "the dismissal of [a Korean] defendant for lack of personal jurisdiction w[ould] not work an injustice" where the court had personal jurisdiction over other defendants).

      **The Judicial System's Interest in an Effective Resolution**.  Nothing in Griffiths' allegations point to any special judicial interest in this matter.  As explained above, even if CGU is dismissed, this Court will retain jurisdiction over other defendants.

      **Pertinent Policy Arguments**.  The final gestalt factor requires the court to "consider the common interests of all sovereigns in promoting substantive social policies." Sawtelle, 70 F.3d at 1395.  Here, Griffiths' claims against CGU do not raise any particular Massachusetts policies.  Massachusetts has little interest in a company that is incorporated in

England and has no connections to Massachusetts.  In addition, Griffiths is not a resident of

Massachusetts.  Massachusetts therefore does not have an interest in redressing an injury to one

of its citizens.  Compare Id. ("Here, the most prominent policy implicated is the ability of a state

to provide a convenient forum for its residents . . . .")

        As an analysis of the five gestalt factors demonstrates, requiring CGU (a company

headquartered in London and incorporated under the laws of England and Wales) to defend

against claims brought by a Hawaii resident in a Massachusetts court would be constitutionally

unreasonable.  In addition, "the reasonableness stage of the jurisdictional analysis evokes a

sliding scale:  [T]he weaker the plaintiff's showings on the first two prongs (relatedness and

purposeful availment), the less a defendant need show in terms of unreasonableness to defeat

jurisdiction."  Id. at 1394.  Thus, even if Griffiths could satisfy the relatedness and purposeful

availment tests -- and he cannot -- it would be unreasonable to assert jurisdiction over CGU

given its extremely limited contacts with Massachusetts.  See Id. ("The frailty of plaintiffs'

showings on relatedness and purposeful availment is not strengthened as a result of our

consideration of the reasonableness of an exercise of jurisdiction . . . .").

## CONCLUSION

For the reasons discussed above, CGU's motion should be granted in its entirety

and the Complaint dismissed with prejudice and without leave to amend.

Dated: January 22, 2016                    Respectfully submitted,
      Boston, Massachusetts

                                       /s/ James R. Carroll
                                       James R. Carroll (BBO #554426)
                                       Michael S. Hines (BBO #653943)
                                       Nicholas Ramacher (BBO #680258)
                                       SKADDEN, ARPS, SLATE,
                                          MEAGHER & FLOM LLP
                                       500 Boylston Street
                                       Boston, Massachusetts 02116
                                       (617) 573-4800
                                       james.carroll@skadden.com
                                       michael.hines@skadden.com
                                       nick.ramacher@skadden.com

                                       Counsel for Defendant
                                       Aviva International Insurance Limited

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on January 22, 2016.

Dated: January 22, 2016                    /s/ James R. Carroll
                                           James R. Carroll

18