UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
------------------------------ x
JOHN W. GRIFFITHS, on behalf of    :
himself and all others similarly situated,
                                    :
          Plaintiff,                   Civil Action
                                    :  No. 15-13022-NMG
     v.
                                    :  LEAVE TO FILE GRANTED ON 3/8/2016
AVIVA LONDON ASSIGNMENT
CORPORATION, AVIVA LIFE            :
INSURANCE COMPANY, AVIVA
INTERNATIONAL INSURANCE LTD,       :
f/k/a CGU INTERNATIONAL
INSURANCE, plc, ATHENE HOLDING,    :
LTD, ATHENE LONDON
ASSIGNMENT CORPORATION and         :
ATHENE ANNUITY AND LIFE
COMPANY,                           :

          Defendants.              :
------------------------------ x
```

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT AVIVA INTERNATIONAL INSURANCE LIMITED'S
(FORMERLY CGU INTERNATIONAL INSURANCE, PLC)
<u>MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION</u>**

 

James R. Carroll
Michael S. Hines
Nicholas Ramacher
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800

Counsel for Defendant
Dated:  March 8, 2016                             Aviva International Insurance Limited

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

ARGUMENT ........................................................................................................................ 1

I.    GRIFFITHS' CLAIMS DO NOT ARISE OUT OF OR RELATE
TO ANY CONTACTS BETWEEN *CGU* AND MASSACHUSETTS ............................. 3

II.   CGU DID NOT PURPOSEFULLY AVAIL ITSELF
OF THE PROTECTION OF MASSACHUSETTS LAWS ................................................ 6

    A.    Griffiths Cannot Distinguish First Circuit Authority Holding That A
Contract Or Guaranty Alone Will Not Establish Purposeful Availment ................. 6

    B.    Griffiths' Authorities Do Not Support
A Finding Of Purposeful Availment Here ............................................................... 9

III.  EXERCISING JURISDICTION OVER CGU WOULD NOT BE REASONABLE ........ 10

CONCLUSION ................................................................................................................... 11

## TABLE OF AUTHORITIES

**CASES**                                                                                                                                  **PAGE(S)**

Astro-Med, Inc. v. Nihon Kohden America, Inc.,
    591 F.3d 1 (1st Cir. 2009)..................................................................................................9

Barrett v. H & R Block, Inc.,
    652 F. Supp. 2d 104 (D. Mass 2009) ................................................................................3

Barrett v. Lombardi,
    239 F.3d 23 (1st Cir. 2001).........................................................................................2, 5, 9

Bond Leather Co., Inc. v. Q.T. Shoe Manufacturing Co., Inc.,
    764 F.2d 928 (1st Cir. 1985)............................................................................................7, 9

Burger King Corp. v. Rudzewicz,
    471 U.S. 462 (1985)............................................................................................................8

Copia Communications, LLC v. AMResorts, L.P.,
    812 F.3d 1 (1st Cir. 2016)..................................................................................................7

Cusumano v. Microsoft Corp.,
    162 F.3d 708 (1st Cir. 1998)............................................................................................11

Deyesso v. Kaizen Management, LLC,
    No. 08-11538-LTS, 2008 WL 5101269 (D. Mass. Nov. 25, 2008).....................................9

Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n,
    142 F.3d 26 (1st Cir. 1998)................................................................................................1

McGee v. International Life Insurance Co.,
    355 U.S. 220 (1957)......................................................................................................9, 10

Metcalfe v. Renaissance Marine, Inc.,
    566 F.3d 324 (3d Cir. 2009)...............................................................................................9

Negron-Torres v. Verizon Communications, Inc.,
    478 F.3d 19 (1st Cir. 2007)................................................................................................3

Northern Laminate Sales, Inc. v. Davis,
    403 F.3d 14 (1st Cir. 2005)...........................................................................................6, 9

Trinetics International, Inc. v. DHL Air & Ocean General Transport, Forwarding & Customs
    Clearance, LLC,
    No. 12-S-2810-NE, 2013 WL 24067 (N.D. Ala. Jan. 2, 2013) .........................................9

United Electrical, Radio & Machine Workers of America v. 163 Pleasant Street Corp.,
    960 F.2d 1080 (1st Cir. 1992)..................................................................................................5

United States v. Swiss American Bank, Ltd.,
    274 F.3d 610 (1st Cir. 2001).................................................................................................1, 3

Wolfman v. Modern Life Insurance Co.,
    352 Mass. 356 (1967) ..........................................................................................................9, 10

Wolverine, Proctor & Schwartz, Inc. v. Aeroglide Corp.,
    394 F. Supp. 2d 299 (D. Mass. 2005) ......................................................................................9

## PRELIMINARY STATEMENT

Aviva International Insurance Limited (formerly CGU International Insurance, PLC, hereinafter "CGU"), a company based in the United Kingdom with no operations in Massachusetts, does not belong in a Massachusetts court, and Plaintiff John W. Griffiths' ("Griffiths") opposition does nothing to change this fact. The Amended Complaint does not allege even a single visit by a CGU employee to Massachusetts, nor even one phone call, email or letter of any kind from a CGU employee into Massachusetts. Griffiths' opposition impermissibly relies on group pleading, the actions of other entities, and/or conclusory allegations. Griffiths cannot show that his claims arise out of or relate to any Massachusetts activities *by CGU* (see Part I, below), that CGU purposefully availed itself of the privilege of conducting operations in Massachusetts (see Part II, below), or that it would be constitutionally reasonable for a Massachusetts court to exercise jurisdiction over CGU (see Part III, below). Each of those deficiencies is independently fatal to Griffiths' attempted assertion of jurisdiction.

None of the cases Griffiths cites in his opposition help him, because those cases either contained actual Massachusetts contacts by the party seeking to avoid jurisdiction or actually held that the court lacked jurisdiction. In addition, Griffiths has ignored the vast majority of relevant cases cited by CGU, such as United States v. Swiss American Bank, Ltd., 274 F.3d 610 (1st Cir. 2001) and Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n, 142 F.3d 26 (1st Cir. 1998).

Griffiths' Amended Complaint should be dismissed as to CGU for lack of personal jurisdiction.

## ARGUMENT

To establish personal jurisdiction, Griffiths must show that (1) his claims "directly arise out of, or relate to," CGU's activities in Massachusetts, (2) those Massachusetts activities (if

any) "represent a purposeful availment of the privilege of conducting activities in [Massachusetts] . . . making [CGU's] involuntary presence before the state's courts foreseeable," and (3) "the exercise of jurisdiction [would] be reasonable." Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001).  But, as his opposition makes clear, Griffiths cannot establish any one of those elements -- let alone all three -- without resort to group pleading and attempts to impute the actions of other entities to CGU.  For example, Griffiths states:  "The Complaint alleges that 'AVIVA' -- which includes CGU -- [made promises] to the Plaintiffs . . . ."  (Opp. at 2.)[1]  But the Amended Complaint alleges no communications between *CGU* and Griffiths or any other member of the putative class, and Griffiths' own exhibits show that only entities *other than CGU* communicated with Griffiths.  (See Am. Compl. Ex. A (agreement between Griffiths, the City of Honolulu, and the predecessors to Aviva London Assignment Corporation ("Aviva London") and Aviva Life Insurance Company, *not CGU*) and Ex. B (communications between Griffiths, an insurance agent in Honolulu, and various entities, *not CGU*).)[2]

       Similarly, Griffiths states that there was a "written promise by CGU 'that Defendant CGU would stand behind the Guaranteed Annuities and ensure that all payments called for by the Guaranteed Annuities would be made and made timely.'"  (Opp. at 2 (emphasis original).)  But the Amended Complaint alleges that "AVIVA" made this promise, and that "[t]he CMA Guarantee was set forth in correspondence from AVIVA USA Corporation," *not CGU*.  (Id. ¶ 38.)  CGU cited substantial case law holding that the actions of CGU's former affiliates

---

[1]    Citations in the form "Opp." are to Plaintiff's Opposition To The Motion Of Defendant Aviva International Insurance Limited (Formerly CGU International Insurance, PLC) To Dismiss For Lack Of Personal Jurisdiction (ECF No. 35).

[2]    Citations in the form "Am. Compl." are to the Amended Class Action Complaint (ECF No. 28).

"do[] not confer jurisdiction over [CGU] . . . [t]here is a presumption of corporate separateness that must be overcome by clear evidence." (Opening Br. at 8-9[3] (citing Barrett v. H & R Block, Inc., 652 F. Supp. 2d 104, 115 (D. Mass. 2009) and Negron-Torres v. Verizon Communications, Inc., 478 F.3d 19, 27 (1st Cir. 2007).) Griffiths cites no authority that contradicts this rule -- nor can he -- and he provides no basis for piercing the corporate veil.

Without the crutch of group pleading, Griffiths is left with a single fact: that Aviva London's "annuity obligations were fully guaranteed under a capital maintenance agreement ('CMA') with its London affiliate Defendant CGU" (Am. Compl. ¶ 37), but a contract alone is not sufficient to establish relatedness, purposeful availment, or reasonableness (and no case has otherwise held).

**I.    GRIFFITHS' CLAIMS DO NOT ARISE OUT OF OR RELATE
       TO ANY CONTACTS BETWEEN *CGU* AND MASSACHUSETTS**

Griffiths' claims do not arise out of or relate to any contacts between CGU and Massachusetts because Griffiths has not alleged any such contacts. As explained in CGU's opening brief (see Opening Br. at 10-12), CGU's capital maintenance agreement with Aviva London is "not itself a contact"; rather, Griffiths must show that his case arises from "specific contacts" between CGU and Massachusetts. United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 621 (1st Cir. 2001) (emphasis original). But Griffiths has alleged no contacts between CGU and Massachusetts: no phone calls, no visits, no emails. The CMA does not provide such contacts: CGU considered, signed, and received corporate approvals for the CMA in London.

---

[3]   Citations in the form "Opening Br." are to the Memorandum of Law In Support Of Defendant Aviva International Insurance Limited's (Formerly CGU International Insurance, PLC) Motion To Dismiss For Lack Of Personal Jurisdiction (ECF No. 30).

Griffiths asserts that his "claims are focused entirely on the CMA, which is the forum-directed activity said to provide the basis for this Court's assertion of personal jurisdiction." (Opp. at 6.) This statement is both incorrect and highlights the flaw in Griffiths' jurisdictional argument. <u>First</u>, as the Amended Complaint and its exhibits make plain, Griffiths' claims are focused on his negotiations and contract with Aviva London and Aviva Life Insurance Company and the CMA's eventual termination "in accordance with its original terms." (<u>See</u> Am. Compl. ¶ 50.) Griffiths has not alleged <u>any</u> actions taken by CGU relating to those events, much less actions that involved Massachusetts contacts. <u>Second</u>, Griffiths' assertion makes clear that he relies on the CMA as a Massachusetts contact. (Opp. at 6 ("[T]he CMA . . . is the forum-directed activity . . . .").) But the law is clear that a mere contract with a Massachusetts entity, including a guaranty, does not create personal jurisdiction in Massachusetts. (<u>See</u> Opening Br. at 10-12 and cases cited therein.) Griffiths makes no effort to distinguish the cases cited by CGU on this point. (<u>See</u> Opp. at 6.)

Griffiths speculates that CGU had "a 'continuing' duty to be apprised of" Aviva London's obligations, to "check continually" that Aviva London had sufficient capital, and to "pay the amounts due throughout the term . . . of the Agreement." (Opp. at 4.) The Amended Complaint, however, contains no such allegations. The only support Griffiths cites for those assertions is a letter from Aviva London -- not CGU -- stating that CGU had agreed to "maintain sufficient capital in Aviva London." (Opp. at 4; Cooper Decl. Ex. A.)[4] That letter says nothing about CGU taking any steps to "apprise[]" itself of Aviva London's obligations, to "check" Aviva London's capital, or to "pay" any "amounts due," and it says nothing about CGU reaching into

---

[4] Citations in the form "Cooper Decl." are to the Declaration Of Kirstine Cooper In Support Of Defendant Aviva International Insurance Limited's (Formerly CGU International Insurance, PLC) Motion To Dismiss For Lack Of Personal Jurisdiction (ECF No. 31).

4

Massachusetts.  "In order to defeat a motion to dismiss for want of in personam jurisdiction, a plaintiff must do more than simply surmise the existence of a favorable factual scenario . . . . Thus, allegations in a lawyer's brief or legal memorandum are insufficient, even under the relatively relaxed prima facie standard, to establish jurisdictional facts."  Barrett v. Lombardi, 239 F.3d 23, 27 (1st Cir. 2001).

In addition, Griffiths' unsupported speculation would still not create jurisdiction over CGU.  United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080 (1st Cir. 1992), cited by Griffiths, is instructive, and militates against jurisdiction here.  In that case, retired employees of a bankrupt Massachusetts-based manufacturer sued their employer's parent, which was headquartered in Scotland, seeking health benefits under a collective bargaining agreement with their bankrupt employer.  Id. at 1083.  The parent was involved in negotiating the collective bargaining agreement, but it was not a signatory.  The parent also appointed the employer's board members and some senior executives, gave direction regarding the employer's finances, and made multiple injections of capital into the employer.  Id. at 1083-84.

In examining relatedness, the First Circuit explained that the employees' "cause of action center[ed] on [the parent's] supposed breach of a contractual and statutory duty to pay health-care premiums."  Id. at 1089.  Thus, the employees' claims could not "conceivably be said to have arisen directly from, or been caused proximately by," the parent's monitoring of the employer's finances and injections of capital.  Id.  The First Circuit examined only the parent's involvement in the negotiation of the collective bargaining agreement which did not support jurisdiction because there was "no indication in the record that [the parent's] involvement in the negotiations took place in the forum state or by means of communication to and from the forum.

. . . If the negotiations occurred outside the forum state, their existence cannot serve to bolster [jurisdiction]." Id. at 1089-90.  The First Circuit refused to consider "conjecture, speculation, and surmise" about how and where the negotiations were conducted.  Id. At 1090.  Here, Griffiths has not alleged any facts related to CGU's participation in negotiating Griffiths' policy or terminating the CMA, much less where CGU's actions took place, and he offers only "conjecture, speculation, and surmise" concerning CGU's conduct during the CMA's term.

Griffiths' reliance on Northern Laminate Sales, Inc. v. Davis, 403 F.3d 14 (1st Cir. 2005), is similarly misplaced.  In that case, the individual defendant challenging jurisdiction "had not stepped foot in New Hampshire [the forum state] for over ten years." Id. at 25.  He had, however, reached out to New Hampshire to set up a meeting, at which the individual made misleading statements about his employer's financial condition that induced continued shipments by the plaintiff. Id. at 18-19.  The individual also sent letters and emails to the plaintiff in New Hampshire, reiterating his misleading statements.  Id. at 19-20.  The individual's statements formed the basis of the plaintiff's fraud and negligent misrepresentation claims.  Id. at 21.  On that record, the court determined that the individual had sufficient contacts with New Hampshire to establish personal jurisdiction.  Id. at 25-26.  Here, by contrast, Griffiths has not alleged even one CGU contact with Massachusetts.  Nor has he alleged a single statement or representation made by CGU -- as opposed to Aviva London -- or contested the fact that CGU had no contact with Griffiths or other members of the putative class.  (See Cooper Decl. ¶¶ 7-10.)

## II.   CGU DID NOT PURPOSEFULLY AVAIL ITSELF OF THE PROTECTION OF MASSACHUSETTS LAWS

### A.   Griffiths Cannot Distinguish First Circuit Authority Holding That A Contract Or Guaranty Alone Will Not Establish Purposeful Availment

Griffiths alleges only one action by CGU:  that it entered into the CMA with a company headquartered in Massachusetts.  Griffiths does not, and cannot, dispute that CGU

6

signed and considered the CMA in London, sent no employees to Massachusetts, has no offices, employees, or property in Massachusetts, and had no contact with Griffiths or any putative class members related to their annuities. (See Cooper Decl. ¶¶ 5-14.)

As explained further in CGU's opening brief (see Opening Br. at 13-14), a contract, including a guaranty, with a Massachusetts company is insufficient to establish purposeful availment. Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 5 (1st Cir. 2016); Bond Leather Co., Inc. v. Q.T. Shoe Mfg. Co., Inc., 764 F.2d 928, 935 (1st Cir. 1985). In Copia, the plaintiff, a Massachusetts company, agreed to provide internet services to the Jamaican hotels of a resort operator. Id. at 2. The contract was proposed and executed in Jamaica and performance occurred "almost exclusively" in Jamaica, but the contract provided for notice to the plaintiff in Massachusetts, the plaintiff's Massachusetts employees "sometimes" received phone calls and emails from the resort operator, the plaintiff shipped equipment from Massachusetts, and the resort operator addressed payments to Massachusetts. Id. At 2-3. The First Circuit held that those contacts did *not* amount to purposeful availment, because the resort operator "sought no privilege to conduct any activities in Massachusetts and did nothing to invoke the benefits and protections of Massachusetts law beyond implicitly relying on the state's laws in the way that any party to a contract relies on the laws of the jurisdiction in which his counter-party happens to reside." Id. at 5. Here, Griffiths has not alleged any conduct by CGU that shows that CGU did more than "implicitly rely[ ] on [Massachusetts's] laws" as a party to a contract with a Massachusetts corporation.

Similarly, in Bond Leather, the First Circuit held that contracting with a Massachusetts company to guaranty a debt owed by a third party was insufficient to establish purposeful availment. 764 F.2d at 933-34. Griffiths' efforts to distinguish Bond Leather fail.

First, Griffiths argues that "CGU did not simply guarantee a small number of specific debts . . . it took on an 'unconditional' and 'continuing' obligation." (Opp. at 11.) But the First Circuit did not focus on the type of obligation guaranteed; instead, it focused on the lack of actual contacts between the guarantor and Massachusetts. Here, as in Bond Leather, Griffiths has alleged no contacts between CGU and Massachusetts.

Second, Griffiths argues that the CMA "was broadcast by a Massachusetts business to its customers and used by that entity to solicit an entire book of business from thousands of people, all of whom then entered into contracts in Massachusetts on the basis of that assurance." Id. It is well-settled, however, that "the unilateral activity of another party or third person" cannot establish voluntariness. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985). Here, Griffiths has not alleged a single fact demonstrating CGU's involvement in any "broadcast," "solicit[ation]," or contract negotiations, much less any contacts with Massachusetts related to those activities. All of the activities Griffiths describes are those of other parties.[5]

Third, Griffiths asserts that in Bond Leather "'[t]he guaranty agreement called for no active role by [the defendant].' Here, by contrast, CGU had 'unconditional' and 'continuing' duties under the agreement at issue." (Opp. at 11-12 (internal citation omitted).) Griffiths' repeated use of the words "unconditional" and "continuing" is not substitute for *facts* showing actual contacts with Massachusetts. The Amended Complaint alleges no contacts between CGU and Massachusetts, and Griffiths' attempt to "surmise the existence of a favorable factual

---

[5] Griffiths states that "CGU makes no effort to . . . confront" the allegation "[o]n information and belief" that "the sole purpose of the CMA was to affect the strength, and thereby the price, of annuitites." (Opp. at 2-3 (quoting Am. Compl. ¶ 39).) In fact, CGU addressed this precise allegation in its opening brief. (Opening Br. at 9.) In addition, Griffiths does not cite any authority that finds personal jurisdiction based on the "purpose" of a contract. (See Opp. at 3.)

8

scenario . . . in a lawyer's brief or legal memorandum [is] insufficient." See Barrett, 239 F.3d at 27.[6]

### B. Griffiths' Authorities Do Not Support A Finding Of Purposeful Availment Here

Griffiths argues that "a long line of authority requiring insurance companies to defend in a jurisdiction where they have guaranteed a risk" support his claim that this Court has jurisdiction over CGU, and discusses McGee v. Int'l Life Ins. Co., 355 U.S. 220 (1957), Wolfman v. Modern Life Ins. Co., 352 Mass. 356 (1967), and Northern Laminates, 403 F.3d 14. (Opp. at 8-10.)[7] As described above, the court in Northern Laminates found jurisdiction over an individual who personally made misrepresentations to a corporation's representative to induce

---

[6] Griffiths' reliance on Wolverine, Proctor & Schwartz, Inc. v. Aeroglide Corp., 394 F. Supp. 2d 299 (D. Mass. 2005), and Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1 (1st Cir. 2009), is also misplaced. The Wolverine court unsurprisingly found personal jurisdiction where the defendant had communicated with the Massachusetts plaintiff for ten years concerning a potential acquisition before entering the contract at issue, and the contract had mutual obligations and was governed by Massachusetts law. 394 F. Supp. at 309-10. Astro-Med involved interference with a non-competition agreement that the employee had signed in the forum, that provided for exclusive jurisdiction in the forum, and that the defendant had received. 591 F.3d at 10. Griffiths alleges no similar facts, and the cases say nothing about Griffiths' effort to obtain jurisdiction over CGU, a foreign company, based solely on its capital maintenance agreement with a separate entity.

[7] Griffiths string-cites four additional cases (Opp. at 10), but none saves his argument. Bond Leather, 764 F.2d at 933-34, held that the court had no personal jurisdiction, and the court in Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 335 (3d Cir. 2009), found general, not specific, jurisdiction. The other two cases involved significant contacts between the defendant and the plaintiffs in the plaintiffs' chosen forums. See Deyesso v. Kaizen Mgmt., LLC, No. 08-11538-LTS, 2008 WL 5101269, at *14 (D. Mass. Nov. 25, 2008) (finding jurisdiction where the defendant solicited the loan he guaranteed from a Massachusetts lender, communicated with the lender in Massachusetts, and visited Massachusetts in connection with the transaction); Trinetics Int'l, Inc. v. DHL Air & Ocean Gen. Transp., Forwarding & Customs Clearance, LLC, No. 12-S-2810-NE, 2013 WL 24067, at *15 (N.D. Ala. Jan. 2, 2013) (finding jurisdiction where the defendants "served as one of plaintiffs' primary contacts," arranged "payments to plaintiffs," "promised to pay a debt," and sent an email to and had a "discussion" with the plaintiffs' agents located in the forum).

9

the corporation to keep shipping product from the forum state, and made calls and sent letters and emails into the forum state affirming the misrepresentations.  Id. at 18-20.  Griffiths has alleged no similar contacts with Massachusetts or actions by CGU.

McGee and Wolfman are also not on point.  Both cases involved a suit by the beneficiary of a life insurance policy against the insurance company that issued the policy.  In McGee, the policy "was delivered in [the forum], the premiums were mailed from there and the insured was a resident of that State when he died."  355 U.S. at 223.  In Wolfman, the insurance company's agents had multiple phone calls with and mailed multiple letters to the beneficiary, knowing the beneficiary was in Massachusetts.  352 Mass. at 358-60.  There are no such facts here, where there was no contractual relationship, and no communication, between CGU and Griffiths.

### III.  EXERCISING JURISDICTION OVER CGU WOULD NOT BE REASONABLE

Griffiths does not dispute that most of the Gestalt factors weigh against jurisdiction.  As shown in CGU's opening brief:  (1) defending this case in Massachusetts would be a substantial burden for CGU, as it has no employees, offices, or other resources in the Commonwealth; (2) Massachusetts has no interest in adjudicating a dispute between residents of Hawaii and the United Kingdom; (3) Massachusetts is not a uniquely convenient forum for Griffiths, a citizen of Hawaii, and Griffiths' alleged injuries (if viable) can be redressed by the remaining defendants; and (4) Griffiths' claims do not touch any particular Massachusetts policies.  (See Opening Br. at 15-17.)

Griffiths addresses only the first point, arguing that "there will be no significant incremental burden" on CGU if this Court finds it has jurisdiction because CGU "will be called upon to produce documents here regardless of whether it remains a party or is dismissed."  (Opp. at 13.)  That is not true.  By remaining in this case, CGU would be involved in all aspects of

10

motion practice, class certification, and trial. Its Massachusetts counsel would have to interview and prepare employees located in the United Kingdom, and CGU might need significant numbers of foreign witnesses to defend itself at trial. Griffiths ignores all of those additional burdens. Even document production would be more onerous, because non-parties are entitled to more protection than litigants. Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998) ("[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs.")

The Gestalt factors therefore weigh strongly against exercising jurisdiction over CGU.

## CONCLUSION

For the reasons discussed above and in CGU's opening brief, CGU's motion should be granted in its entirety and the Amended Complaint (ECF No. 28) dismissed with prejudice and without leave to amend.

Dated: March 8, 2016
      Boston, Massachusetts

Respectfully submitted,

/s/ James R. Carroll
James R. Carroll (BBO #554426)
Michael S. Hines (BBO #653943)
Nicholas Ramacher (BBO #680258)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
michael.hines@skadden.com
nick.ramacher@skadden.com

Counsel for Defendant
Aviva International Insurance Limited

---

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on March 8, 2016.

Dated:  March 8, 2016    /s/ James R. Carroll
                                          James R. Carroll