United States District Court
District of Massachusetts

```
                            )
JOHN GRIFFITHS,             )
                            )
        Plaintiff,          )
                            )
        v.                  )    Civil Action No.
                            )    15-13022-NMG
AVIVA LONDON ASSIGNMENT     )
CORPORATION, AVIVA LIFE     )
INSURANCE COMPANY,CGU       )
INTERNATIONAL INSURANCE, PLC, )
ATHENE HOLDING, LTD, ATHENE )
LONDON ASSIGNMENT CORPORATION )
AND ATHENE ANNUITY AND LIFE )
COMPANY,                    )
                            )
        Defendants.         )
                            )
```

MEMORANDUM & ORDER

GORTON, J.

I. **Introduction**

Griffiths is a representative of a putative class of
annuity holders.  He brings claims against Aviva International
Insurance Limited (formerly known as CGU International
Insurance, hereinafter "CGU"), as well as several other
defendants, for breach of contract, breach of fiduciary duty,
promissory estoppel and unjust enrichment.  At issue now is
defendant's motion to dismiss all claims against CGU for want of
personal jurisdiction.

## II.  Background

### A. Factual Background

In 2001, Griffiths resolved a personal injury suit against the City of Honolulu.  Instead of receiving a lump sum settlement, he opted to purchase a structured settlement annuity to ensure a steady income for the rest of his life.

Griffiths bought the annuity from Aviva Life Insurance Company and Aviva London Assignment Corporation (collectively "Aviva").  Part of the appeal of the annuity was that Aviva had entered into a capital maintenance agreement ("CMA") with defendant, CGU, by which CGU guaranteed all annuities sold by Aviva.  Plaintiff alleges that the guarantee added value, stability and confidence to the annuity.  According to plaintiff, the guarantee was represented as being "absolute, unconditional, present and continuing."

In October, 2013, Aviva divested its ownership of Griffiths' annuity and the obligation was transferred to a company known as Athene London Assignment Corporation.  As a result of that transfer, the CMA between Aviva and CGU was terminated and the annuity was no longer guaranteed by CGU.

CGU is a London-based corporation and is a wholly-owned subsidiary of Aviva PLC, a holding company organized under the laws of England and Wales.  CGU has no offices or employees in Massachusetts, pays no Massachusetts taxes and maintains no bank

accounts in Massachusetts.  CGU had no involvement in the
marketing, selling, paying or setting of rates of the annuities
at issue and its involvement in this case and in Massachusetts
is confined to its role as guarantor of structured settlement
annuities sold by Aviva.

### B. Procedural Background

In July, 2015, Griffiths filed a complaint against CGU and
five other defendants.  With respect to all defendants,
plaintiff alleges breach of contract, breach of a fiduciary
duty, promissory estoppel and unjust enrichment.  Each claim
stems from the termination of the CMA between Aviva and CGU.
CGU seeks to dismiss all claims against it for lack of personal
jurisdiction.

## III. Analysis

### A. Personal Jurisdiction

In order for a Court's orders to bind a party, the Court
must exercise personal jurisdiction over that party.  On a
motion to dismiss for want of personal jurisdiction, plaintiff
bears the burden of showing that such jurisdiction exists.
Massachusetts Sch. of Law v. ABA, 142 F.3d 26, 34 (1st Cir.
1998); see Fed. R. Civ. P. 12(b)(2).  In conducting this
inquiry, the Court accepts the facts put forth by plaintiff and
those facts are construed in the light most favorable to
plaintiff's jurisdictional claim. Massachusetts Sch. of Law, 142

-3-

F.3d at 34.  Additionally, the Court considers as true the facts put forth by defendant to the extent that they are not contradicted. Id.

Plaintiff must make two showings: that jurisdiction is statutorily authorized, and that the exercise of jurisdiction is consistent with the Due Process Clause of the United States Constitution. Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 8 (1st Cir. 2009).  Because the Court has jurisdiction over this case based on a diversity of citizenship, 28 U.S.C. § 1332, the Court "is the functional equivalent of a state court sitting in the forum state." Ticketmaster-New York v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994).  In other words, in diversity cases "the district court's personal jurisdiction over a nonresident defendant is governed by the forum's long-arm statute." Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995) (quoting Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc., 982 F.2d 686, 690 (1st Cir. 1993)).  Defendant has not argued that its actions fall outside the reach of the Massachusetts long-arm statute, M.G.L. c. 223A, and thus, the Court will proceed directly to the constitutional analysis.

Plaintiffs are provided two alternative methods of demonstrating how the Court may constitutionally exercise

personal jurisdiction over CGU.  The first is through general

personal jurisdiction.  General personal jurisdiction

> exists when the litigation is not directly founded on
> the defendant's forum-based contacts, but the defendant
> has nevertheless engaged in continuous and systematic
> activity, unrelated to the suit, in the forum state.

United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp.,

960 F.2d 1080, 1088 (1st Cir. 1992).

The second method relies on specific personal

jurisdiction.  Specific personal jurisdiction "exists when there

is a demonstrable nexus between a plaintiff's claims and a

defendant's forum-based activities."  Massachusetts Sch. of Law,

142 F.3d at 34.

**1. General Personal Jurisdiction**

The Court's analysis of general personal jurisdiction need

only be brief.  Personal jurisdiction over an entity that is

neither incorporated, nor has a principle place of business, in

the forum state exists only in exceptional cases. Daimler AG v.

Bauman, 134 S. Ct. 746, 761 n. 19 (2014).  Specifically, general

personal jurisdiction exists when a corporation's operations are

"so substantial and of such a nature as to render the

corporation at home in that State." Id.  Plaintiff has not put

forth such a theory, and therefore the Court will not find such

an exception here.

## 2. Specific Personal Jurisdiction

Griffiths' assertion that the Court may exercise specific personal jurisdiction over CGU requires more analysis.  The Due Process Clause of the Fourteenth Amendment requires that a defendant have "minimum contacts" with the forum state such that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  That analysis requires a tripartite inquiry:

1)  Whether the plaintiffs' claim arises out of, or relates to, defendants' in-forum activities;

2)  Whether defendant's contacts with the forum state represent a purposeful availment by defendants of the privilege of conducting business in that State; and

3)  Whether the exercise of jurisdiction is reasonable under the circumstances.

Sawtelle, 70 F.3d at 1389, 1391.

### a. Relatedness

The first prong questions whether "the claim underlying the litigation . . . directly arise[s] out of, or relate[s] to, the defendant's forum-state activities."  Astro-Med, Inc., 591 F.3d at 9 (internal quotation marks omitted).  An exercise of personal jurisdiction over defendant will not be proper if defendant's "forum-state contacts seem[] attenuated and indirect." Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir.

2005).  This is a "flexible, relaxed standard," but nevertheless serves the important function of focusing on "the nexus between a plaintiff's claim and the defendant's contacts with the forum." Sawtelle, 70 F.3d at 1389.

Plaintiff has alleged only one interaction between defendant and the forum state: the CMA.  The CMA's connection to Massachusetts, however, is neither "attenuated" nor "indirect." Harlow, 432 F.3d at 61.  In the CMA, CGU agreed to guarantee all of Aviva's annuities, which were sold from, and in, Massachusetts.  The CMA, and specifically its termination, is at the heart of plaintiff's claim.  The CMA is the "very document that represents [defendant's] forum-related activity" and is, therefore, undoubtedly related.  Pritzker v. Yari, 42 F.3d 53, 61 (1st Cir. 1994).

This single, meaningful contact with Massachusetts is sufficient to meet the diminutive burden of showing relatedness.

### b. Purposeful Availment

The second prong of the tripartite inquiry questions whether defendant's contacts with the forum state represent a "purposeful availment by defendants of the privilege of conducting business in that State." Sawtelle, 70 F.3d at 1389. The focus here is on voluntariness and foreseeability, as it would be unfair to subject a party to the Court's jurisdiction if it were solely based upon a defendant's "random, isolated, or

-7-

fortuitous" contacts with the forum state. <u>Keeton</u> v. <u>Hustler
Magazine, Inc.</u>, 465 U.S. 770, 774 (1984); <u>Astro-Med, Inc.</u>, 591
F.3d at 10.

Entering into a single contract with a Massachusetts
resident "is not necessarily sufficient to meet the
constitutional minimum for jurisdiction." <u>Bond Leather Co.</u> v.
<u>Q.T. Shoe Mfg. Co.</u>, 764 F.2d 928, 933 (1st Cir. 1985).  The
Court does not engage in a "numbers game" and instead focuses on
"the nature of the contact." <u>Pritzker</u>, 42 F.3d at 61.

The question is whether CGU's contact with the Commonwealth
constitutes a purposeful decision to participate in the local
economy and avail itself of those benefits. <u>Id.</u>  The First
Circuit Court of Appeals has rejected the argument that solely
by guaranteeing payment, and thereby inducing a party to sell a
certain product, did a non-resident guarantor make "a purposeful
decision which is <u>independently</u> sufficient to support
jurisdiction." <u>Id.</u> at 934 (emphasis in original).

There is, however, an important distinction between CGU's
contacts with Massachusetts and the contacts alleged in <u>Bond
Leather Co.</u>  CGU does not guarantee just one debt but instead
guarantees all of the annuities sold by Aviva in Massachusetts.
Those guarantees form a "nexus between a plaintiff's claims and
a defendant's forum-based activities."  <u>Massachusetts Sch. of
Law</u>, 142 F.3d at 34.

Further, CGU's guarantee created a right that was enforceable.  That enforceable right, packaged with an annuity, was sold throughout the United States and Massachusetts by a Massachusetts company.  The annuities were sold based on the quality and consistency of CGU's guarantee, and that guarantee doubtlessly added to the annuity's value.  This relationship to Massachusetts is not "random, isolated, or fortuitous." Keeton, 465 U.S. at 774.  To the contrary, it is enough to show that CGU has availed itself of doing business in Massachusetts and has done so purposefully.

### c. Reasonableness

The final prong is to assay the reasonableness of imposing jurisdiction on a party.  The Supreme Court has provided a number of "Gestalt factors" to be considered.  Those factors include 1) defendant's burden of appearing, 2) the forum state's interest in adjudicating the dispute, 3) plaintiff's interest in obtaining convenient and effective relief, 4) the judicial system's interest in obtaining the most effective resolution of the controversy and 5) the common interests of all sovereigns in promoting substantive social policies. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985).  This prong is not considered in isolation but instead operates on a sliding scale, such that in very close cases, it "may tip the constitutional balance." Pritzker, 42 F.3d at 64.

-9-

Turning to the first factor, CGU argues that because it is a London corporation with no ties to Massachusetts, subjecting it to the Court's jurisdiction would be an onerous burden.  It is safe to assume, however, that appearing in a foreign jurisdiction will always be burdensome and costly.  Instead, the first Gestalt factor weighs in favor of dismissal only when "a party can demonstrate some kind of special or unusual burden." Pritzker, 42 F.3d at 64.  It cannot be said that business travel between London and Boston comprises such a special or unusual burden in the modern age. See id. (finding no special or unusual burden in traveling between New York and Puerto Rico). Furthermore, the case will go forward regardless of CGU's involvement as a party.  CGU will be called upon to produce documents either way, reducing the incremental burden of its participation as a defendant in this jurisdiction.  Accordingly, this factor weighs in favor of plaintiff who chose this forum.

The second Gestalt factor considers the Commonwealth's interest in the dispute.  Massachusetts certainly has an interest in deciding suits involving its corporations but its interest in resolving a suit between a citizen of Hawaii and a London corporation is markedly less compelling.

Next, the Court turns to plaintiff's interest in obtaining convenient relief.  As the First Circuit Court of Appeals has stated with monotonous consistency, a plaintiff's choice of

-10-

forum must be accorded a level of deference with respect to its own convenience. <u>Ticketmaster</u>, 26 F.3d at 211.  Further, if CGU were to be dismissed, the case would still proceed in Massachusetts.  Accordingly, to obtain full relief from all parties involved, plaintiff would be compelled to bring an additional action in London.  This factor weighs in favor of the plaintiff.

The penultimate Gestalt factor takes into account the judicial system's interest in an effective resolution.  As is common in these kinds of cases the "interest of the judicial system in the effective administration of justice does not appear to cut in either direction." <u>Id.</u>

Finally, the Court must consider any pertinent policy arguments.  Generally, the policy of most concern "is the ability of a state to provide a convenient forum for its residents to redress injuries inflicted by out-of-forum actors." <u>Sawtelle</u>, 70 F.3d at 1395.  Because plaintiff is a resident of Hawaii and defendant is a United Kingdom corporation, such a policy is not implicated here.

The reasonableness inquiry operates in such a way that it may tip the constitutional balance.  Here, the Gestalt factors, outlined above, do not point so clearly in one direction or the other as to merit placing the thumb on that scale for either party.

### 3. Conclusion

Plaintiff has met the burden of showing that defendant has "minimum contacts" with Massachusetts such that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co., 326 U.S. at 316.

### ORDER

For the forgoing reasons, defendant's motion to dismiss for lack of personal jurisdiction (Docket No. 29) is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton_____
Nathaniel M. Gorton
United States District Judge

Dated May 20, 2016