# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN W. GRIFFITHS, on behalf of himself and all others similarly situated, Plaintiff, | ) ) ) ) | Civil Action No. 15-cv-13022-NMG |
| v. | ) ) | |
| AVIVA LONDON ASSIGNMENT CORPORATION, AVIVA LIFE INSURANCE COMPANY, AVIVA INTERNATIONAL INSURANCE LTD, f/k/a CGU INTERNATIONAL INSURANCE, plc, ATHENE HOLDING, LTD, ATHENE LONDON ASSIGNMENT CORPORATION and ATHENE ANNUITY AND LIFE COMPANY, Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) | |

## SETTLEMENT AGREEMENT AND RELEASE

## EXHIBIT LIST

1.   Proposed Final Approval Order and Judgment

2.   Notice

3.   Proposed Preliminary Approval Order

4.   Notice Plan

This Settlement Agreement and Release ("Agreement") is entered into on May 1, 2018 by and among Plaintiff, John W. Griffiths ("Plaintiff"), on his own behalf and on behalf of the Settlement Class defined below, and Defendants Athene London Assignment Corporation (f/k/a Aviva London Assignment Corporation) ("Athene London"), Athene Holding Ltd. ("AHL"), and Athene Annuity and Life Company (successor to Aviva Life Insurance Company) (collectively, "Athene Defendants").

## RECITALS

WHEREAS, on July 27, 2015, Plaintiff filed a putative class action complaint against Athene Defendants in the United States District Court for the District of Massachusetts (the "Court"), and on December 18, 2015 filed an amended putative class action complaint (the "Operative Complaint") (the initial complaint, together with all subsequent pleadings and proceedings in this case, are collectively referred to as the "Action");

WHEREAS, the Operative Complaint alleges various claims against Athene Defendants relating to the termination of Capital Maintenance Agreements ("Aviva CMAs") including claims for breach of contract, breach of fiduciary duty, promissory estoppel, and unjust enrichment;

WHEREAS, during the pendency of this Action, Plaintiff has raised various other claims against Athene Defendants, including but not limited to a violation of Mass. Gen. L. ch. 93A;

WHEREAS, all of the asserted claims at issue arise, in whole or in part, from the termination of the Aviva CMAs;

WHEREAS, in 2017, the Settling Parties (as defined in Paragraph 1.22) began engaging in settlement discussions that continued through the Spring and Summer of 2017;

WHEREAS, on September 20, 2017, the Settling Parties reached agreement on a term sheet that contained the material terms of a proposed settlement;

WHEREAS, both during discovery in the Action and during the course of settlement discussions, the Settling Parties exchanged substantial documentation and information so as to evaluate the merits of their respective claims and defenses;

WHEREAS, the Settling Parties have agreed to settle the claims that were or could have been asserted in the Action on the terms and conditions set forth in this Agreement;

WHEREAS, the Settling Parties have decided to enter into this Settlement (as defined in Paragraph 1.17) because it provides substantial and meaningful benefits to the members of the Settlement Class (as defined in Paragraph 1.20) and to avoid the uncertainties and halt the substantial expense, business disruption, and burden inherent in continued litigation;

NOW, THEREFORE, it is agreed, by and among the undersigned, and intending to be legally bound, that this Action shall be settled and dismissed with prejudice on the merits on the terms and conditions set forth herein, subject to judicial approval.

## I.    DEFINITIONS

1.1    "Administration Costs" shall mean all reasonable costs incurred by the Settlement Administrator (as defined in Paragraph 1.18) and/or Escrow Agent (as defined in Paragraph 1.10) in administering and effectuating this Settlement, which costs and expenses are necessitated by performance and implementation of this Agreement and any Court orders relating thereto.

1.2    "Athene Defendants' Counsel" shall mean Sidley Austin LLP.

1.3    "Attorneys' Fees and Expenses" shall mean any and all attorneys' fees, costs (including expert costs) and expenses of Class Counsel (as defined in Paragraph 1.4) for their past, present, and future work, efforts, and expenditures in connection with this Action and resulting Settlement.

1.4    "Class Counsel" shall mean Marcus & Auerbach LLC.

1.5    "Class Member" shall mean any member of the Settlement Class.

1.6    "Class Representative" shall mean John W. Griffiths.

1.7    "Defendant Released Parties" shall mean Athene Defendants and each of their present and future parents, predecessors, successors, spin-offs, assigns, holding companies, joint ventures and joint-venturers, partnerships and partners, members, divisions, stockholders, bondholders, subsidiaries, related companies, affiliates, officers, directors, employees, associates, representatives, brokers, vendors, advertisers, marketers, agents, attorneys, insurers, administrators and advisors; *provided, however,* that Defendant Released Parties do not include Aviva International Insurance Limited, Aviva plc, or any other companies currently owned by Aviva plc.

1.8    "Effective Date" shall mean (a) the date upon which the applicable period to appeal the Final Approval Order and Judgment (as defined in Paragraph 1.14) has expired, if no appeal on any issue is taken during such period; or (b) if, during the aforesaid appeals period, an appeal is taken from such judgment, the date upon which all appeals, including petitions for review, rehearing, or certiorari, and any proceedings resulting therefrom, have been finally disposed of, or the date of the expiration of the time to initiate such petitions or proceedings. It is expressly agreed by the Settling Parties and their counsel that no Settling Party intends that this provision nor any other part of this Agreement establishes or acknowledges that anyone is entitled to or has the right to appeal from any such orders which may be entered in connection herewith.

1.9    "Escrow Account" shall mean an account at an established financial institution agreed upon by the Settling Parties that is established for the deposit of any amounts relating to the Settlement.

-3-

1.10    "Escrow Agent" shall mean the Settlement Administrator, or whatever other person or entity is approved by the Court to act as escrow agent for any portion of the Settlement Amount (as defined in Paragraph 1.19) deposited in or accruing in the Escrow Account pursuant to this Agreement.

1.11    "Fee and Expense Application" shall mean the petition, to be filed by Class Counsel, seeking approval of an award of Attorneys' Fees and Expenses.

1.12    "Final Approval Hearing" shall mean the hearing to be held before the Court pursuant to Federal Rule of Civil Procedure 23(e) to determine whether the Agreement should receive Final Approval (as defined in Paragraph 1.13) by the Court. The Settling Parties will request that the Final Approval Hearing shall be scheduled for a date no earlier than 100 days after the entry of the Preliminary Approval Order (as defined in Paragraph 1.16).

1.13    "Final Approval" shall mean the entry of the Final Approval Order and Judgment.

1.14    "Final Approval Order and Judgment" or "Final Approval Order" shall mean a final order entered by the Court after the Final Approval Hearing, identical in all material respects to that attached hereto as Exhibit 1, granting its approval of the Settlement. The Settling Parties may agree to additions or modifications to the form of the Final Approval Order and Judgment as they agree are appropriate at the time that it is submitted to the Court for final approval of the Settlement.

1.15    "Notice" shall mean the notice, identical in all material respects to that attached hereto as Exhibit 2, to be provided by mail or electronic mail to members of the Settlement Class pursuant to Paragraph 3.1, and to be made available on the Settlement Website (as defined in Paragraph 1.21).

1.16    "Preliminary Approval Order" shall mean an order entered by the Court

preliminarily approving the Settlement, pursuant to Paragraph 2.1 below, which is identical in all

material respects to that attached hereto as Exhibit 3.

1.17    "Settlement" shall mean the compromise and settlement embodied in this

Agreement.

1.18    "Settlement Administrator" shall mean Strategic Claims Services.

1.19    "Settlement Amount" shall mean $2,300,000.

1.20    "Settlement Class" shall mean the following:

All beneficiaries of structured settlement annuities assigned to Athene London
Assignment Corporation (formerly known as Aviva London Assignment Corporation
and as CGNU London Annuity Service Corp.), which includes all annuities covered
by the Capital Maintenance Agreement between CGU International Insurance plc and
CGNU London Annuity Service Corp. dated February 1, 2002, where such annuities
remained in force as of October 2, 2013. Excluded from the proposed class are the
Athene Defendants' officers, directors and members of their immediate families and
any entity in which the Athene Defendants have controlling interest, the legal
representatives, heirs, successors or assigns of any such excluded party, the judicial
officer(s) to whom this action is assigned, and the members of their immediate
families.

1.21    "Settlement Website" shall have the meaning ascribed to it in Paragraph 3.3.

1.22    "Settling Parties" shall mean Class Representative and Athene Defendants.

1.23    "Taxes" shall have the meaning ascribed to it in Paragraph 4.1(e).

1.24    "Tax-Related Costs" shall have the meaning ascribed to it in Paragraph 4.1(e).

II.    **MOTION FOR PRELIMINARY APPROVAL AND CERTIFICATION OF
PROPOSED CLASS FOR SETTLEMENT PURPOSES**

2.1    *Motion for Preliminary Approval and Certification of Settlement Class*. As soon

as is practicable after execution of this Agreement, Class Representative shall move the Court (i)

for preliminary approval of the Settlement, including entry of an order identical in all material

respects to the form of the Preliminary Approval Order attached as Exhibit 3 hereto, and (ii) for

purposes of this Settlement only, conditional certification of the Settlement Class.

2.2   *Basis for Certification of Settlement Class.* Class Representative will seek

certification of the Settlement Class under Rule 23(b)(2), or alternatively under Rule 23(b)(3).

2.3   *Certification for Settlement Purposes Only.* Athene Defendants shall not take

any position with respect to certification of the Settlement Class only for the limited purpose of

effectuating this Agreement because, as the Supreme Court recognized in *Amchem Products, Inc.*

*v. Windsor*, district courts need not inquire whether certification of a settlement class would

impose manageability problems. 521 U.S. 591, 620 (1997). Athene Defendants reserve all rights

to object to the propriety of class certification in the Action if the Settlement does not receive

Final Approval, or if Final Approval is granted by the Court but is subsequently reversed,

vacated, or modified in any material respect by the Court or any other court, using any

appropriate argument.

2.4   *Vacating Settlement Certification and Reservation of Rights.* The certification of

the Settlement Class shall be binding only with respect to the Settlement of the Action. If this

Agreement is terminated, or if Final Approval is granted by the Court but subsequently reversed,

vacated, or modified in any material respect by the Court or any other court, the certification of

the Settlement Class shall be vacated, and the Action shall proceed as though the Settlement

Class had never been certified.

## III.   NOTICE, EXCLUSION, AND OBJECTIONS

3.1   *Notice to the Settlement Class.* Notice to the Settlement Class shall be provided

in accordance with the Notice Plan attached hereto as Exhibit 4.

3.2     *Class Action Fairness Act Notice*. Athene Defendants shall comply with the notice requirements of 28 U.S.C. § 1715 and shall file a notice confirming compliance prior to the Final Approval Hearing.

3.3     *Settlement Website*. Within thirty (30) days of the entry of the Preliminary Approval Order and no later than the first date that notice is provided to the Settlement Class, the Settlement Administrator shall establish the Settlement Website, which will contain Notice, this Agreement and its exhibits. The Notice, attached hereto as Exhibit 2, will identify the web address of the Settlement Website.

3.4     *Rights of Exclusion*. Class Members shall be permitted to opt out of the Settlement Class, provided that they comply with the requirements for doing so as set forth in the Preliminary Approval Order.   Requests for exclusion from the Settlement Class that comply with the requirements set forth in the Preliminary Approval Order are referred to as Exclusion Requests.

3.5     *Right to Object*. Class Members shall be permitted to object to the Settlement. Requirements for filing an objection shall be as set forth in the Preliminary Approval Order.

IV.     **MONETARY PAYMENTS**

4.1     *The Settlement Amount*.

(a)     Athene Defendants shall cause the Settlement Amount to be deposited by wire transfer into the Escrow Account within ten (10) days of the Effective Date. The Settlement Amount shall be used solely for the purposes set forth in Paragraph 4.1(f) below.

(b)     Subject to Court approval and oversight, the Escrow Account will be controlled by the Escrow Agent. Neither Athene Defendants, nor Class Counsel, nor Class Representative shall have any liability whatsoever for the acts or omissions of the Escrow Agent appointed by the Court. The Escrow Agent shall not disburse the Settlement Amount or any portion thereof

except as provided for in this Agreement, by an order of the Court, or with prior written agreement of Class Counsel and Defendants' Counsel.

(c)     All funds held in the Escrow Account shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until the funds are distributed in accordance with this Agreement.

(d)     The Escrow Account is intended to be a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1. The Escrow Agent, as administrator of the Qualified Settlement Fund within the meaning of Treasury Regulation §1.468B-2(k)(3), shall be solely responsible for filing tax returns for the Escrow Account and paying from the Escrow Account any Taxes owed with respect to the Escrow Account. Athene Defendants agree to provide the Escrow Agent with the statement described in Treasury Regulation §1.468B-3(e). Neither Athene Defendants, Athene Defendants' Counsel, Class Representative, nor Class Counsel shall have any liability or responsibility of any sort for filing any tax returns or paying any taxes with respect to the Escrow Account.

(e)     All (i) taxes on the income of the Escrow Account ("Taxes") and (ii) expenses and costs incurred in connection with the taxation of the Escrow Account (including, without limitation, expenses of tax attorneys and accountants) ("Tax-Related Costs") shall be timely paid by the Escrow Agent out of the Escrow Account.

(f)     The Settlement Amount, together with any interest accrued thereon, will be used to make the following payments associated with the Settlement, in decreasing order of priority:

(1)     Taxes and Tax-Related Costs;

(2)     Any Administration Costs in excess of $200,000 to the extent such costs were not advanced by Athene Defendants or any other settling defendants;

(3)     Any amount in excess of $25,000 of any Service Award (as defined in

Paragraph 4.4) approved by the Court under the circumstances described in

Paragraph 4.4

(4)     All Attorneys' Fees and Expenses approved by the Court;

(5)     Any payments to Class Members pursuant to Paragraphs 4.2 and 4.3; and

(6)     Any *cy pres* distribution pursuant to Paragraph 4.3.

4.2     ***Distribution of Residual Funds.***

(a)     Any money remaining from the Settlement Amount, including any accrued

interest thereon, after the payments set forth in Paragraph 4.1(f)(1)-(4) are made (the

"Distributable Settlement Amount"), shall be distributed as follows to Class Members who have

not excluded themselves from the class, provided that the payment to each such Class Member

would be equal to or greater than $10.00:

(1)     The "Annuity Proportion" shall be calculated for each Annuity by dividing

the premium paid for each annuity by the total premium paid for all annuities assigned to

Athene London Assignment Corporation where such annuities remained in force as of

October 2, 2013.

(2)     The "Annuity Recovery" shall be calculated for each Annuity by

multiplying the Annuity Proportion by the Distributable Settlement Amount.

(3)     The "Individual Recovery" shall be calculated for each beneficiary of each

Annuity by dividing the Annuity Recovery by the number of beneficiaries of that annuity

who have not served an Exclusion Request.

(4)     The Settlement Administrator shall make a distribution to each Class

Member in the amount of the Class Member's Individual Recovery.

(b)      The Escrow Agent shall disburse the Distributable Settlement Amount as promptly as possible after the Effective Date and, in any event, no later than two hundred-seventy (270) days after the Effective Date.

(c)      Class Members receiving settlement checks must cash them within one hundred eighty (180) days of issuance. If they do not do so, the settlement checks will be void. This limitation shall be printed on the face of each settlement check, bearing the notation "CASH PROMPTLY, VOID AND SUBJECT TO REDISTRIBUTION TO OTHER CLASS MEMBERS 180 DAYS AFTER ISSUE DATE." Class Counsel and the Settlement Administrator are authorized to locate and/or contact any Class member who has not cashed a settlement check within said time.

4.3      *Treatment of Undistributed Funds and Uncashed Checks*. Any funds associated with checks that are not cashed within one hundred eighty (180) days of issuance shall be distributed to Class Members who did cash their checks, in an amount proportionate to each such Class Member's Individual Recovery, provided that the payment to each such Class Member would be equal to or greater than $10.00.   If this supplemental distribution to any Class Member would not exceed $10.00, then no supplemental check will be sent to that Class Member. Any residual funds, and any funds that cannot be distributed to Class Members for any other reason, together with any interest earned thereon, and after the payment of any applicable taxes by the Escrow Agent, shall be donated to an appropriate charity or charities pursuant to a *cy pres* award of the Court. As soon as practicable following the Effective Date, Class Counsel shall make any application for a *cy pres* award of any such funds to the Court. Athene Defendants and Class Counsel agree that Class Counsel will recommend to the Court that any such *cy pres* distribution be made to the Greater Boston Legal Services, unless the parties agree

that Class Counsel will recommend to the Court that a *cy pres* distribution be made to another entity.

4.4     *Service Award.* Any service award to Class Representative approved by the Court ("Service Award") shall be paid by Athene Defendants separate and apart from the Settlement Amount, subject to the following limitations. First, if Class Representative reaches a settlement with another defendant, then Athene Defendants' share of funding any Service Award shall be 50%. Second, in no event will Athene Defendants be required to pay in excess of $12,500 towards any Service Award. In the event that Class Representative does not reach any settlement with another defendant, and the Court approves a Service Award that is greater than $12,500, then the amount of such Service Award exceeding $12,500 shall be paid from the Settlement Amount, and not paid by Athene Defendants separate and apart from the Settlement Amount.

4.5     *Administration Costs.*

(a)     Administration Costs up to $100,000 shall be paid by Athene Defendants separate and apart from the Settlement Amount. Athene Defendants will in no event be required to pay Administration Costs in excess of $100,000.

(b)     If Class Representative reaches a settlement with another defendant and all settling defendants share any common expenses and costs, including but not limited to Administration Costs, Athene Defendants shall pay no more than 50% of such shared costs, *provided, however*, that nothing in this Paragraph 4.5(b) requires Athene to pay Administration Costs in excess of $100,000.

(c)     If Administration Costs exceed $100,000, in the event that Athene Defendants provide any up-front payment of such excess costs, then Athene Defendants shall be entitled to reduce the sum paid as the Settlement Amount by the amount of such excess Administration

Costs. To illustrate, if Athene Defendants pay Administration Costs totaling $150,000 (including excess costs of $50,000), then Athene Defendants will be entitled to a $50,000 reduction in the amount required to be paid as the Settlement Amount, and will be required to pay only $2,250,000.

(d)      Beginning thirty (30) days after the entry of the Preliminary Approval Order, and on every thirty (30) days thereafter, the Settlement Administrator shall provide counsel to the Settling Parties with a detailed accounting of any Administration Costs expended to date. Every thirty (30) days, the Settlement Administrator shall issue an invoice to Athene Defendants in an amount of 50% of the Administration Costs incurred during the invoiced period, with the remaining 50% of the Administration Costs to be paid by other settling defendants.   Athene Defendants shall pay the amounts invoiced by the Settlement Administrator up to $100,000. Any disputes as to whether amounts billed by the Settlement Administrator are reasonable and necessary under this Agreement shall be resolved by the Court.

4.6      *Entire Monetary Obligation*. In no event shall Athene Defendants be required to pay any amounts other than, or in excess of, the Settlement Amount of $2.3 million, plus $100,000 in Administration Costs, plus up to $12,500 towards a Service Award. In no event shall Athene Defendants be required to pay in excess of $2,412,500. It is understood and agreed that Athene Defendants' monetary obligations under this Settlement Agreement will be fully discharged by making the payments set forth in this Paragraph 4.6, and that Athene Defendants shall have no other monetary obligations, or obligations to make any other payments to Class Representative, the Settlement Class, the Settlement Administrator, or Class Counsel under this Agreement or otherwise.

## V.    NEW CAPITAL MAINTENANCE AGREEMENT

5.1    *New Capital Maintenance Agreement.* As part of the Settlement of this Action, and to benefit the Settlement Class, Athene Defendants agree that, within ten (10) business days of the Effective Date, AHL and Athene London shall enter into a new Capital Maintenance Agreement ("New CMA"), providing that:

(a)    For so long as Athene London has any obligations under any assumed settlement agreement, AHL agrees to contribute cash, cash equivalents, marketable securities, or other liquid assets so as to maintain capital in Athene London sufficient to ensure that it has the necessary funds to timely satisfy such obligations. AHL shall make such contribution upon receiving the notice described below from Athene London that it does not have the necessary funds to timely satisfy such obligations ("Deficiency Notice"), and shall thereafter make periodic contributions to the extent needed to render any such Deficiency Notice no longer necessary.

(b)    AHL shall cause Athene Annuity and Life Company to report to AHL and Athene London the amount in U.S. dollars for 100% of the Company Action Level Risk-Based Capital of Athene Annuity and Life Company and the actual Company Action Level Risk-Based Capital cover ratio of Athene Annuity and Life Company, such reports to be submitted quarterly, (i) within 45 calendar days of the end of the first three quarters of each year, and (ii) within 60 calendar days of the end of the fourth quarter of each year.

(c)    Athene London shall send a Deficiency Notice to AHL stating that it does not have the necessary funds to timely satisfy such obligations at the earlier of (i) determining that Athene London lacks funds sufficient to timely satisfy its obligations under any assumed settlement agreement or (ii) fourteen (14) days after Athene London is notified that a check to a structured settlement beneficiary has been dishonored due to a lack of sufficient funds if Athene

London fails to make the required payment to the beneficiary within fourteen (14) days after the check is dishonored.

(d)     AHL's agreement is absolute, unconditional, present, and continuing until the last payment has been made under any annuity covered by the New CMA, subject to termination provisions set forth below.

5.2     *New CMA Termination*. The New CMA terminates when all of the following conditions are met:

(a)     AHL and Athene London cease to be affiliated,

(b)     Athene London enters into a capital maintenance agreement wherein a new company with an investment grade rating agrees to take on all of the same obligations AHL has under the New CMA, and

(c)     the transaction by which AHL and Athene London cease to be affiliated (and pursuant to which Athene London enters into a new capital maintenance agreement with a new company) is approved by the Iowa Insurance Division (or other domiciliary insurance regulator, for example if the domicile of Athene Annuity and Life Company is changed); it being understood that if the Iowa Insurance Division (or other domiciliary insurance regulator) does not actually approve the transaction, then the New CMA shall remain in full force and effect.

5.3     *No Right of Payment to Any Third Party*. AHL's obligations under the New CMA are for the sole benefit of Athene London, and the New CMA does not create any right of payment from AHL to any third party.

5.4     *Governing Law for the New CMA*. The New CMA is to be governed by New York law.

-14-

5.5     *Athene Defendants' Notification Requirements Pertaining to the New CMA*.
Athene Defendants have agreed to certain additional disclosure requirements pertaining to the New CMA:

(a)     If the Iowa Insurance Division (or other domiciliary regulator) is requested to approve a transaction that would cause AHL and Athene London to cease to be affiliated, AHL shall promptly provide public notification on the website of AHL that such a request for approval has been submitted. In addition, AHL will provide written notification of such a request to Class Representative and Class Counsel if the request is submitted within seven (7) years of the Effective Date.

(b)     For a period of at least seven (7) years following the Effective Date, AHL will disclose the existence of the New CMA in its Annual Reports on Form 10-K filed with the U.S. Securities and Exchange Commission, and shall state in such annual reports whether it anticipates making any capital infusions pursuant to the New CMA.

(c)     If AHL makes a capital infusion pursuant to the New CMA, within thirty (30) days of such infusion, AHL or Athene London shall provide public notification of the fact, amount, and date of such infusion and of the financial condition of Athene London.

5.6     *Irreparable Harm*. The Settling Parties stipulate and agree that the failure of AHL to perform under the New CMA by making sufficient contributions so as to maintain capital in Athene London to ensure that it has the necessary funds available to timely satisfy such obligations would constitute irreparable harm to Class Members if that failure is not cured within a reasonable time period; *provided, however,* that this stipulation and agreement does not cover any other situation, including without limitation situations where a payment is delayed or not made due to inadvertence or mistake by any party, or a technical or information technology

problem, nor does it cover disputes with individual annuity beneficiaries over their payment terms.

5.7    *Benefits of the New CMA*. The New CMA provides additional protections to Class Members, including the following:

(a)    AHL is better capitalized than Aviva International Insurance Ltd. ("AII"), the guarantor under the Aviva CMAs. As of April 2017, AHL had approximately $7 billion in equity, whereas AII had approximately 2.6 billion GBP ($3.3 billion) in equity.

(b)    The New CMA creates obligations from AHL directly to Athene London, the entity responsible for making payments to annuity beneficiaries.

## VI.    SETTLEMENT ADMINISTRATION

6.1    The Settlement Administrator shall administer the Settlement subject to the supervision of Class Counsel, Athene Defendants' Counsel, and the Court as circumstances may require.

6.2    Athene Defendants and Athene Defendants' Counsel shall have no responsibility for, interest in, or liability whatsoever, with respect to:

(a)    any act, omission, or determination of the Settlement Administrator, Class Counsel or designees or agents of Class Counsel or the Settlement Administrator;

(b)    the management, investment, or distribution of the Settlement Amount; or

(c)    the determination, administration, calculation, or payment of any claims asserted against the Settlement Amount.

6.3    The Settlement Administrator shall provide to Class Counsel and Athene Defendants' Counsel, no less than monthly, a full accounting of all expenditures made in connection with the Settlement, including Administration Costs, and any distributions from the Settlement Amount.

6.4     The Settlement Administrator shall provide such information as may be reasonably requested by Class Counsel or counsel for Athene Defendants relating to administration of this Agreement.

## VII.     RELEASES AND WAIVERS

7.1     Upon the Effective Date, in consideration for the relief provided by Athene Defendants in the Settlement, Class Representative and each member of the Settlement Class, on behalf of themselves and any other legal or natural persons and entities who or which may claim by, through, or under them, including their executors, administrators, heirs, assigns, privies, predecessors, and successors, agree to fully, finally, and forever release, relinquish, acquit, discharge and hold harmless the Defendant Released Parties from any and all claims, demands, suits, petitions, liabilities, causes of action, rights, losses, damages and relief of any kind or type regarding the subject matter of the Action, including, but not limited to, compensatory, exemplary, statutory, punitive, restitutionary, expert or attorney's fees and costs, whether past, present, or future, mature or not yet mature, known or unknown, suspected or unsuspected, contingent or non-contingent, derivative, vicarious or direct, asserted or unasserted, and whether based on federal, state or local law, statute, ordinance, rule, regulation, code, contract, tort, fraud or misrepresentation, common law, violation of any state's or territory's deceptive, unlawful, or unfair business or trade practices, false, misleading or fraudulent advertising, consumer fraud or consumer protection statutes, or other laws, unjust enrichment, or any claim of any kind, in law or in equity, arising from, related to, connected with, or in any way involving the subject matter of the Actions, that are or could have been alleged, asserted, or described in the Class Action Complaint, Amended Class Action Complaint, Second Amended Class Action Complaint, or any further amendment thereto.

     7.2    Upon the Effective Date, Class Representative and all Class Members shall expressly waive and relinquish, and shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

     7.3    Upon the Effective Date, Class Representative and all Class Members shall expressly waive and relinquish, and shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or international or foreign law, which is similar, comparable, or equivalent to California Civil Code §1542. Plaintiff and Class Members may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the claims released herein, but Plaintiff and all Class Members shall expressly fully, finally, and forever settle and release, and upon the Effective Date shall be deemed to have fully, finally, and forever settled and released, any and all claims as described in this Release and Waiver, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts. Plaintiff and Class Members acknowledge that the foregoing waiver and relinquishment were separately bargained for and are key elements of the Settlement of which this release is a part.

## VIII.  MONETARY PAYMENTS

8.1     Class Counsel intends to submit a Fee and Expense Application seeking an award based on the value of the Settlement and the work performed. Athene Defendants will not oppose the Fee and Expense Application provided that the amount requested for an award of attorneys' fees in the Fee and Expense Application does not exceed 30% of the total value to the Settlement Class of this Agreement and any settlement agreement Class Representative may reach with any other defendant in this Action. Any amount awarded by the Court in response to the Fee and Expense Application shall be paid by the Escrow Agent solely out of the Settlement Amount and shall be deducted from the Settlement Amount and paid to Class Counsel within ten (10) days of Athene Defendants' deposit of the Settlement Amount into the Escrow Account. Notwithstanding any other provision of this Agreement, the allowance or disallowance (in whole or in part) by the Court or by any appellate court of the Fee and Expense Application shall not operate to terminate or cancel this Agreement, provide any basis for Class Counsel or Class Representative to terminate, cancel, or withdraw from the Agreement, and shall not be deemed a modification of a material aspect of the Agreement.

8.2     Class Counsel intends to submit an application for a Service Award payable to Class Representative in an amount not to exceed $25,000. Athene Defendants will not oppose such an application. Any amount awarded by the Court in response to the application for a Service Award shall be paid by Athene Defendants, or by the Escrow Agent out of the Settlement Amount pursuant to Paragraph 4.4, as applicable, within ten (10) days of Athene Defendants' deposit of the Settlement Amount into the Escrow Account. Notwithstanding any other provision of this Agreement, the allowance or disallowance (in whole or in part) by the Court or by any appellate court of the application for a Service Award shall not operate to terminate or cancel this Agreement, provide any basis for Class Counsel or Class Representative

to terminate, cancel, or withdraw from the Agreement, and shall not be deemed a modification of

a material aspect of the Agreement. Neither Class Counsel's application for, nor Class

Representative's entitlement to, a Service Award shall be conditioned in any way upon Class

Representative's support for this Agreement. Class Representative's support for this Agreement

is not conditioned on the application for a Service Award or the amount of such Service Award

requested therein, nor is his support for this Agreement conditioned on his receiving a Service

Award in any particular amount or on his receiving any Service Award at all.

## IX.   TERMINATION OF SETTLEMENT

9.1    If any of the following events occur, Class Counsel or Athene Defendants may

terminate this Agreement and the Settlement by serving on counsel for the opposing party and

filing with the Court a written notice of termination within ten (10) business days of the event (or

such longer time as may be agreed between Class Counsel and Athene Defendants):

(a)    Class Counsel and Athene Defendants agree to termination before the Effective

Date;

(b)    The Court or any reviewing appellate court declines to enter or materially

modifies the Preliminary Approval Order, the proposed Final Order and Judgment, or the

Agreement;

(c)    The Court or any reviewing appellate court declines to grant preliminary approval

or final approval of the Settlement;

(d)    A reviewing appellate court reverses the Final Order and Judgment, and the

Settlement is not reinstated and finally approved without material change by the Court on

remand; or

(e)    The Effective Date does not occur.

(f)     For purposes of this Agreement and this Paragraph 9.1, no order of the Court, or modification or reversal of such order by any reviewing appellate court, solely concerning the administration of the Settlement or the persons performing such administrative functions, or the award or amount of any Attorneys' Fees and Expenses or Service Award shall constitute grounds for termination of the Agreement.

9.2     If for any reason this Agreement is terminated, disapproved, or fails to become effective, then:

(a)     The Settling Parties shall be deemed to have reverted to their respective status in the Action as of September 19, 2017, which shall then resume proceedings in the Court, and, except as otherwise expressly provided in this Settlement Agreement, the Parties shall proceed in all respects as if this Agreement and any related orders had not been entered.

(b)     Paragraph 2.4 and Section X of this Agreement shall survive termination of the Agreement.

## X.     NO ADMISSION OF WRONGDOING OR LIABILITY

10.1     Athene Defendants dispute the claims alleged in the Action and do not by this Agreement or otherwise admit any liability or wrongdoing of any kind. This Agreement, and any of its terms, any agreement or order relating thereto, and any payment or consideration provided for herein, are not and shall not be construed as an admission by any Athene Defendant or any of the Defendant Released Parties of any fault, wrongdoing, or liability. Athene Defendants have agreed to enter into this Agreement solely to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could have been asserted in the Action.

10.2     Class Counsel and Class Representative believe that the claims asserted in the Action have merit, and have examined and considered the benefits to be obtained under the

proposed Settlement set forth in this Agreement, the likelihood that class members would not pursue individual litigation to seek redress for violations of their interests, particularly considering the costs of pursuing such litigation, the risks associated with the continued prosecution of this complex, costly, and time-consuming litigation, including certification of a class and upholding certification on appeal, the delay in providing benefits to the Settlement Class in the event that this Action was not settled, and the likelihood of success on the merits. Class Counsel and Class Representative have concluded that the proposed Settlement set forth in this Agreement is fair, reasonable, adequate, and in the best interests of Class Members.

10.3   This Agreement, and any of its terms, and any agreement, exhibit, or order relating thereto, shall not be offered by any Settling Party to be received in evidence in any civil, criminal, administrative, or other proceeding, or utilized in any manner as a presumption, a concession, or an admission of any fault, wrongdoing, or liability on the part of Athene Defendants. However, nothing contained in this Paragraph 10.3 shall prevent this Agreement (or any agreement, exhibit, or order relating thereto) from being used, offered, or received in evidence in any proceeding to approve, enforce, or otherwise effectuate the Settlement (or any agreement or order relating thereto) or the Final Approval Order and Judgment. This Agreement may be filed and used in other proceedings, where relevant, to demonstrate the fact of its existence and of this Settlement, including, but not limited to, Defendant Released Parties filing the Agreement and/or the Final Approval Order and Judgment in any other action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, waiver, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

## XI.   MISCELLANEOUS

11.1   *Recitals.* The Parties agree that the recitals are contractual in nature and form a material part of this Agreement.

11.2   *Binding Effect.* This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Class Representative and Athene Defendants.

11.3   *Cooperation of Parties.* The Settling Parties agree to cooperate in good faith with one another to prepare and execute all documents, to seek Court approval, defend Court approval, and to do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

11.4   *Obligation to Meet and Confer.* Before filing any motion with the Court raising a dispute arising out of or related to this Agreement, the Settling Parties shall consult with each other and certify to the Court that they have consulted in good faith.

11.5   *No Disparaging Statements.* Settling Parties and their counsel shall make no statements to the press or make any other public statements (not including statements made in any judicial proceeding supporting approval of, or enforcement of the terms of, the settlement) describing this Settlement that disparage the Settlement or any Settling Party or accuse any Settling Party of wrongdoing. Class Counsel may provide a factual summary of the allegations set forth in the Operative Complaint, but may not publicly suggest or state that the Settlement or its terms shows that those allegations were correct or that any Settling Party committed any wrongful act. Nothing in this Agreement shall be construed to prevent Class Representative and Class Counsel from freely and frankly communicating with the Class Members.

11.6   *Entire Agreement.* This Agreement is the entire agreement among the Settling Parties and it supersedes any prior agreements, written or oral, between the Settling Parties. This

-23-

Agreement cannot be altered, modified or amended except through a writing executed by all Settling Parties.

11.7    *Construction of Agreement.* This Agreement shall be construed to effectuate the intent of the Settling Parties to resolve all disputes encompassed by the Agreement. All Settling Parties have participated in the drafting of this Agreement, and any ambiguity shall not be resolved by virtue of a presumption in favor of any Settling Party. The Agreement was reached at arm's-length by the Settling Parties represented by counsel.

11.8    *Executed in Counterparts.* This Agreement may be executed in counterparts, all of which shall be considered the same as if a single document had been executed, and shall become effective when such counterparts have been signed by each of the Settling Parties and delivered to the other Settling Party. Counterpart copies of signature pages, whether delivered in original, by electronic mail in pdf format and/or by facsimile, taken together shall all be treated as originals and binding signatures.

11.9    *Notices.* Unless otherwise provided herein, any notice, request, instruction, application for Court approval, or application for Court order sought in connection with the Agreement, shall be in writing and either (i) filed electronically with the Court or (ii) delivered personally or sent by certified mail or overnight delivery service, postage prepaid, with copies by facsimile or e-mail to the attention of Class Counsel or Athene Defendants' Counsel (as well as to any other recipients that the Court may specify). Settling Parties may change the person(s) to whom such notices should be directed by giving notice pursuant to this Paragraph 11.9. As of the date hereof, the respective representatives are as follows:

**For Athene Defendants:**

   **Hille R. Sheppard**
   Sidley Austin LLP

One South Dearborn Street
Chicago, IL 60603
Telephone:   (312) 853-7000
Facsimile:   (312) 853-7036
hsheppard@sidley.com

**For Class Representative:**

**Jerome M. Marcus**
Marcus & Auerbach LLC
1121 N. Bethlehem Pike, Suite 60-242
Spring House, PA 19477
Telephone:   (215) 885-2250
Facsimile:   (888) 875-0469
jmarcus@marcusauerbach.com
info@marcusauerbach.com

11.10  *Extensions of Time*. The Settling Parties may agree, subject to the approval of the

Court where required, to reasonable extensions of time to carry out the provisions of the

Agreement.

11.11  *Governing Law*. This Agreement shall be governed by and construed in

accordance with the laws of Massachusetts without giving effect to any conflict of law

provisions that would cause the application of the laws of any jurisdiction other than

Massachusetts.   This provision does not apply to the Governing Law provision of the New

CMA covered by Section V, above, generally, and as set forth in Paragraph 5.4, above,

specifically.

11.12  *Fees and Expenses*. Except as otherwise expressly set forth herein, each Settling

Party hereto shall pay all fees, costs and expenses incurred in connection with the Action,

including fees, costs and expenses incident to his or its negotiation, preparation or compliance

with this Agreement, and including any fees, expenses and disbursements of its counsel,

-25-

accountants, and other advisors. Nothing in this Agreement shall require Athene Defendants to pay any monies other than as expressly provided herein.

11.13 *Retention of Jurisdiction*. The Settling Parties shall request that the Court retain jurisdiction of this matter after the Effective Date and enter such orders as are necessary or appropriate to effectuate the terms of the Agreement.

11.14 *Authority*. Class Counsel represents that they have authority to sign this Settlement Agreement on behalf of Class Representative, that Settlement Class Representative agrees to the terms of this Settlement Agreement, and that Class Counsel are seeking to protect the interests of the entire proposed Class.

**Approved and Agreed to by and on behalf of Class Representative, John W. Griffiths, on behalf of himself and the Settlement Class**

Dated: May 1, 2018          By: _____
                                    Jonathan Auerbach

Dated: May 1, 2018          By: _____
                                    Jerome M. Marcus

**Approved and Agreed to on behalf of Athene London Assignment Corporation**

Dated: April __, 2018          By: _____
                                        Name:
                                        Title:

**Approved and Agreed to on behalf of Athene Holding Ltd.**

Dated: April __, 2018          By: _____
                                        Name:
                                        Title:

**Approved and Agreed to on behalf of Athene Annuity and Life Company**

Dated: April __, 2018                      By: _____
                                                        Name:
                                                        Title:

**Approved and Agreed to on behalf of Athene Defendants' Counsel**

Dated: April __, 2018                      By: _____
                                                        Hille R. Sheppard

-27-

accountants, and other advisors. Nothing in this Agreement shall require Athene Defendants to pay any monies other than as expressly provided herein.

      11.13  *Retention of Jurisdiction.* The Settling Parties shall request that the Court retain jurisdiction of this matter after the Effective Date and enter such orders as are necessary or appropriate to effectuate the terms of the Agreement.

      11.14  *Authority.*  Class Counsel represents that they have authority to sign this Settlement Agreement on behalf of Class Representative, that Settlement Class Representative agrees to the terms of this Settlement Agreement, and that Class Counsel are seeking to protect the interests of the entire proposed Class.

**Approved and Agreed to by and on behalf of Class Representative, John W. Griffiths, on behalf of himself and the Settlement Class**

Dated: April 30, 2018      By:_____
                            Jonathan Auerbach

Dated: April 30, 2018      By:_____
                            Jerome M. Marcus

**Approved and Agreed to on behalf of Athene London Assignment Corporation**

Dated: ~~April~~ *May 1*, 2018      By:_____
                            Name: Christopher R Welp
                            Title: Director, EVP, Insurance Operations

**Approved and Agreed to on behalf of Athene Holding Ltd.**

Dated: April 30, 2018      By:_____
                            Name: CHRISTIAN WALKER
                            Title: VP - LITIGATION

**Approved and Agreed to on behalf of Athene Annuity And Life Company**

Dated: April _30_, 2018                 By: _____

Name: _CHRISTIAN WALKER_

Title: _VP-LITIGATION_

**Approved and Agreed to on behalf of Athene Defendants' Counsel**

Dated: April __, 2018                 By: _____

Hille R. Sheppard