# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN W. GRIFFITHS, on behalf of himself and all others similarly situated, Plaintiff, | ) ) ) ) | Civil Action No. 15-cv-13022-NMG |
| v. | ) ) | |
| AVIVA LONDON ASSIGNMENT CORPORATION, AVIVA LIFE INSURANCE COMPANY, AVIVA INTERNATIONAL INSURANCE LTD, f/k/a CGU INTERNATIONAL INSURANCE, plc, ATHENE HOLDING, LTD, ATHENE LONDON ASSIGNMENT CORPORATION and ATHENE ANNUITY AND LIFE COMPANY, Defendants. | ) ) ) ) ) ) ) ) ) ) ) | |

## SETTLEMENT AGREEMENT AND RELEASE

## TABLE OF CONTENTS

**Page**

RECITALS ............................................................................................1

I.  DEFINITIONS.............................................................................2

II.  MOTION FOR PRELIMINARY APPROVAL AND CERTIFICATION OF
     PROPOSED CLASS FOR SETTLEMENT PURPOSES ....................................6

III.  NOTICE, EXCLUSION, AND OBJECTIONS.....................................7

IV.  MONETARY PAYMENTS ...........................................................8

V.  SETTLEMENT ADMINISTRATION .............................................15

VI.  RELEASES AND WAIVERS.......................................................16

VII.  MONETARY PAYMENTS .........................................................18

VIII.  TERMINATION OF SETTLEMENT ..........................................20

IX.  NO ADMISSION OF WRONGDOING OR LIABILITY .................21

X.  MISCELLANEOUS ..................................................................22

## EXHIBIT LIST

1.   Proposed Final Approval Order and Judgment

2.   Notice

3.   Proposed Preliminary Approval Order

4.   Notice Plan

This Settlement Agreement and Release ("Agreement") is entered into on May 1, 2018 by and among Plaintiff, John W. Griffiths ("Plaintiff"), on his own behalf and on behalf of the Settlement Class defined below, and Defendant Aviva International Insurance Ltd (formerly CGU International Insurance, plc) ("CGU").

## RECITALS

WHEREAS, on July 27, 2015, Plaintiff filed a putative class action complaint against CGU in the United States District Court for the District of Massachusetts (the "Court"), and on December 18, 2015 filed an amended putative class action complaint (the "Operative Complaint") (the initial complaint, together with all subsequent pleadings and proceedings in this case, are collectively referred to as the "Action");

WHEREAS, the Operative Complaint alleges various claims against CGU relating to the termination of capital maintenance agreements including claims for breach of contract, breach of fiduciary duty, promissory estoppel, and unjust enrichment;

WHEREAS, during the pendency of this Action, Plaintiff has raised various other claims against CGU, including but not limited to, a violation of Mass. Gen. Laws ch. 93A;

WHEREAS, all of the asserted claims at issue arise, in whole or in part, from the termination of the capital maintenance agreements;

WHEREAS, in 2017, the Settling Parties (as defined in Paragraph 1.25) began engaging in settlement discussions that continued from the spring through the winter of 2017;

WHEREAS, on December 22, 2017, the Settling Parties reached an arm's-length agreement on a term sheet after two in-person mediation sessions before the Honorable Judith Dein that contained the material terms of a proposed settlement;

WHEREAS, both during discovery in the Action and during the course of settlement discussions, the Settling Parties exchanged substantial documentation and information so as to evaluate the merits of their respective claims and defenses;

WHEREAS, CGU denies any liability or wrongdoing;

WHEREAS, the Settling Parties have agreed to settle any and all claims that were or could have been asserted in the Action on the terms and conditions set forth in this Agreement;

WHEREAS, the Settling Parties have decided to enter into this Settlement (as defined in Paragraph 1.20) because it provides substantial and meaningful benefits to the members of the Settlement Class (as defined in Paragraph 1.23) and to avoid the uncertainties and halt the substantial expense, business disruption, and burden inherent in continued litigation;

NOW, THEREFORE, it is agreed, by and among the undersigned, and intending to be legally bound, that this Action shall be settled and dismissed with prejudice on the merits on the terms and conditions set forth herein, subject to judicial approval.

## I.   DEFINITIONS

1.1    "Administration Costs" shall mean all reasonable costs incurred by the Settlement Administrator (as defined in Paragraph 1.21) and/or Escrow Agent (as defined in Paragraph 1.12) in administering and effectuating this Settlement, which costs and expenses are necessitated by performance and implementation of this Agreement and any Court orders relating thereto.

1.2    "Athene Defendants" shall mean Athene London Assignment Corporation (f/k/a Aviva London Assignment Corporation), Athene Annuity and Life Company (successor to Aviva Life Insurance Company) and Athene Holding Ltd. ("AHL").

1.3    "Attorneys' Fees and Expenses" shall mean any and all attorneys' fees, costs (including expert costs) and expenses of Class Counsel (as defined in Paragraph 1.5) for their

past, present, and future work, efforts, and expenditures in connection with this Action and
resulting Settlement.

    1.4    "CGU Counsel" shall mean Skadden, Arps, Slate, Meagher & Flom LLP.

    1.5    "Class Counsel" shall mean Marcus & Auerbach LLC and Krasnoo, Klehm &
Falkner LLP.

    1.6    "Class Member" shall mean any member of the Settlement Class.

    1.7    "Class Representative" shall mean John W. Griffiths.

    1.8    "Contingent Settlement Payment" shall have the meaning ascribed to it in
Paragraph 4.2(a).

    1.9    "Defendant Released Parties" shall mean CGU, Aviva plc, and all other
companies currently or formerly owned by CGU or Aviva plc and each of their former, present
and future parents, predecessors, successors, spin-offs, assigns, holding companies, joint
ventures and joint-venturers, partnerships and partners, members, divisions, stockholders,
bondholders, subsidiaries, related companies, affiliates, officers, directors, employees, associates,
representatives, brokers, vendors, advertisers, marketers, agents, attorneys, insurers,
administrators and advisors; *provided, however*, that the Defendant Released Parties do not
include the Athene Defendants, or any other companies currently owned by AHL.

    1.10    "Effective Date" shall mean the later of (a) the date upon which the applicable
period to appeal the Final Approval Order and Judgment (as defined in Paragraph 1.16) has
expired, if no appeal on any issue is taken during such period; or (b) if, during the aforesaid
appeals period, an appeal is taken from such judgment, the date upon which all appeals,
including petitions for review, rehearing, or certiorari, and any proceedings resulting therefrom,
have been finally disposed of, or the date of the expiration of the time to initiate such petitions or

proceedings.   It is expressly agreed by the Settling Parties and their counsel that no Settling

Party intends that this provision nor any other part of this Agreement establishes or

acknowledges that anyone is entitled to or has the right to appeal from any such orders which

may be entered in connection herewith.

1.11   "Escrow Account" shall mean an account at an established financial institution

agreed upon by the Settling Parties that is established for the deposit of any amounts relating to

the Settlement.

1.12   "Escrow Agent" shall mean the Settlement Administrator, or whatever other

person or entity is approved by the Court to act as escrow agent for any portion of the Settlement

Amount (as defined in Paragraph 1.22) or any Contingent Settlement Payment deposited in or

accruing in the Escrow Account pursuant to this Agreement.

1.13   "Fee and Expense Application" shall mean the petition, to be filed by Class

Counsel, seeking approval of an award of Attorneys' Fees and Expenses.

1.14   "Fairness Hearing" shall mean the hearing to be held before the Court pursuant to

Federal Rule of Civil Procedure 23(e) to determine whether the Agreement should receive Final

Approval (as defined in Paragraph 1.15) by the Court.   The Settling Parties will request that the

Fairness Hearing shall be scheduled for a date no earlier than 100 days after the entry of the

Preliminary Approval Order (as defined in Paragraph 1.18).

1.15   "Final Approval" shall mean the entry of the Final Approval Order and Judgment.

1.16   "Final Approval Order and Judgment" or "Final Approval Order" shall mean a

final order entered by the Court after the Fairness Hearing approving the Settlement in all

material respects other than as to Attorneys' Fees and Expenses and any Service Award (as

defined in Paragraph 4.6).

1.17   "Notice" shall mean the notice, identical in all material respects to that attached

hereto as Exhibit 2, to be provided by mail or electronic mail to members of the Settlement Class

pursuant to Paragraph 3.1, and to be made available on the Settlement Website (as defined in

Paragraph 1.24).

1.18   "Preliminary Approval Order" shall mean an order entered by the Court

preliminarily approving the Settlement, pursuant to Paragraph 2.1 below, which is identical in all

material respects to that attached hereto as Exhibit 3.

1.19   "Released Claims" shall have the meaning ascribed to it in Paragraph 6.1.

1.20   "Settlement" shall mean the compromise and settlement embodied in this

Agreement.

1.21   "Settlement Administrator" shall mean Strategic Claims Services.

1.22   "Settlement Amount" shall mean $5,000,000.

1.23   "Settlement Class" shall mean the following:

All beneficiaries of structured settlement annuities assigned to Athene London
Assignment Corporation (formerly known as Aviva London Assignment Corporation
and as CGNU London Annuity Service Corp.), which includes all annuities covered by
the Capital Maintenance Agreement between CGU International Insurance plc and
CGNU London Annuity Service Corp. dated February 1, 2002, where such annuities
remained in force as of October 2, 2013. Excluded from the proposed class are the
officers and directors of any Defendant and members of their immediate families and
any entity in which any Defendant has a controlling interest, the legal representatives,
heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom
this action is assigned, and the members of their immediate families.

1.24   "Settlement Website" shall have the meaning ascribed to it in Paragraph 3.3.

1.25   "Settling Parties" shall mean Class Representative and CGU.

1.26   "Taxes" shall have the meaning ascribed to it in Paragraph 4.3(e).

1.27   "Tax-Related Costs" shall have the meaning ascribed to it in Paragraph 4.3(e).

## II.   MOTION FOR PRELIMINARY APPROVAL AND CERTIFICATION OF PROPOSED CLASS FOR SETTLEMENT PURPOSES

2.1   *Motion for Preliminary Approval and Certification of Settlement Class.*   As soon as is practicable after execution of this Agreement, Class Representative shall move the Court (i) for preliminary approval of the Settlement, including entry of an order identical in all material respects to the form of the Preliminary Approval Order attached as Exhibit 3 hereto, and (ii) for purposes of this Settlement only, conditional certification of the Settlement Class.

2.2   *Basis for Certification of Settlement Class.*   Class Representative will seek certification of the Settlement Class under Rule 23(b)(3).

2.3   *Certification for Settlement Purposes Only.*   CGU shall not take any position with respect to certification of the Settlement Class or the appointments of Class Representative and Class Counsel only for the limited purpose of effectuating this Agreement because, as the Supreme Court recognized in *Amchem Products, Inc. v. Windsor*, district courts need not inquire whether certification of a settlement class would impose manageability problems.   521 U.S. 591, 620 (1997).   CGU reserves all rights to object to the propriety of class certification, including the appointment of the Class Representative and/or Class Counsel, in the Action if the Settlement does not receive Final Approval, or if Final Approval is granted by the Court but is subsequently reversed, vacated, or modified in any material respect by the Court or any other court.

2.4   *Vacating Settlement Certification and Reservation of Rights.*   The certification of the Settlement Class and the appointment of the Class Representative and Class Counsel shall be binding only with respect to the Settlement of the Action.   If this Agreement is terminated, or if Final Approval is granted by the Court but subsequently reversed, vacated, or modified in any material respect by the Court or any other court, the certification of the Settlement Class and

-6-

the appointment of the Class Representative and Class Counsel shall be vacated, and the Action

shall proceed as though the Settlement Class had never been certified and the Class

Representative and Class Counsel had never been appointed.

## III.    NOTICE, EXCLUSION, AND OBJECTIONS

3.1    *Notice to the Settlement Class.*   Notice to the Settlement Class shall be provided

in accordance with the Notice Plan attached hereto as Exhibit 4.

3.2    *Class Action Fairness Act Notice.*   Class Counsel shall cause the Settlement

Administrator to send any notice required by 28 U.S.C. § 1715 at the direction of CGU and the

Athene Defendants at the time and manner requested and, if requested by any party, Class

Counsel shall cause the Settlement Administrator to prepare and sign an affidavit affirming such

service.

3.3    *Settlement Website.*   Within fifteen (15) days of the entry of the Preliminary

Approval Order and no later than the first date that Notice is provided to the Settlement Class,

the Settlement Administrator shall establish the Settlement Website, which will contain claims

and relevant case documents, including but not limited to: (i) a copy of all documents filed with

the Court in connection with the Settlement; (ii) all Court orders issued in connection with the

Settlement; (iii) the complaint filed on July 27, 2015 and its exhibits; (iv) the Operative

Complaint and its exhibits; (v) the Defendants' answers to the Operative Complaint; (vi) the

proposed second amended class action complaint filed in this Action on September 1, 2017;

(vii) the capital maintenance agreement dated on or about February 1, 2002, as amended and

modified; (viii) the capital maintenance agreement dated on or about April 11, 2003, as amended

and modified; and (ix) any other documents the Settling Parties agree shall be included.   Class

Counsel shall cause the Fee and Expense Application and any related papers to be posted on the

Settlement Website on the date it is filed with the Court.   The Settling Parties agree that

approval to post content on the Settlement Website will not be unreasonably withheld.   In the event of a dispute, the Settling Parties will raise the issue with the Court and seek the Court's guidance.   The Notice, attached hereto as Exhibit 2, will identify the web address of the Settlement Website.

3.4     *Rights of Exclusion*.   Class Members shall be permitted to opt out of the Settlement Class, provided that they comply with the requirements for doing so as set forth in the Preliminary Approval Order or in the Notice.

3.5     *Right to Object*.   Class Members shall be permitted to object to the Settlement. Requirements for filing an objection shall be as set forth in the Preliminary Approval Order or in the Notice.

## IV.   MONETARY PAYMENTS

4.1     *The Settlement Amount*.

(a)      CGU shall cause the Settlement Amount to be deposited by wire transfer into the Escrow Account within thirty (30) days of the Effective Date.

4.2     *Contingent Settlement Payment*.

(a)      If any payment is made by or on behalf of AHL to Aviva plc in respect of the indemnification and reimbursement obligations under the stock purchase agreement by and between Aviva plc and AHL dated as of December 21, 2012 ("Reimbursement Payment"), an additional payment shall be made to Class Members who do not exclude themselves from the Settlement ("Contingent Settlement Payment") in accordance with the following terms:

(1)      If a Reimbursement Payment is made prior to the commencement of a formal legal proceeding against AHL, regardless of when the payment is received, an amount of 25% of the gross amount of the Reimbursement Payment will be

deposited in the Escrow Account for distribution to Class Members who do not exclude themselves pursuant to Paragraph 3.4.

(2)    If a Reimbursement Payment is made after the commencement of a formal legal proceeding against AHL, regardless of when the payment is actually received, an amount of 25% of the net amount of (x) the Reimbursement Payment minus (y) all of the actual out-of-pocket costs, expenses and fees incurred in connection with and arising out of the legal proceeding against AHL (including but not limited to, attorneys', filing, e-discovery, vendor and hosting, court reporting, expert witness, travel, and photocopying fees and expenses) will be deposited in the Escrow Account for distribution to Class Members who do not exclude themselves pursuant to Paragraph 3.4.

(b)    If a Contingent Settlement Payment becomes due pursuant to Paragraph 4.2(a)(1), CGU shall cause such Contingent Settlement Payment to be deposited by wire transfer into the Escrow Account no later than thirty (30) days after the date upon which Aviva plc receives a Reimbursement Payment from or on behalf of AHL.

(c)    If a Contingent Settlement Payment becomes due pursuant to Paragraph 4.2(a)(2), CGU shall cause such Contingent Settlement Payment to be deposited by wire transfer into the Escrow Account no later than thirty (30) days after the later of (i) the date upon which Aviva plc receives a Reimbursement Payment from or on behalf of AHL and (ii) the date upon which all appeals, including petitions for review, rehearing, or certiorari, and any proceedings resulting therefrom, have been finally disposed of, or the date of the expiration of the time to initiate such petitions or proceedings.

(d)     Aviva plc shall retain absolute and complete control of, and sole and exclusive discretion over, any negotiations with AHL and any litigation against AHL.

4.3     *Payment Terms.*

(a)     The Settlement Amount and any Contingent Settlement Payment shall be used solely for the purposes set forth in Paragraph 4.3(f) below.

(b)     Subject to Court approval and oversight, the Escrow Account will be controlled by the Escrow Agent.   Neither the Defendant Released Parties, nor CGU Counsel, nor Class Counsel, nor Class Representative shall have any liability whatsoever for the acts or omissions of the Escrow Agent appointed by the Court.   The Escrow Agent shall not disburse the Settlement Amount, any Contingent Settlement Payment, or any portion thereof except as provided for in this Agreement, by an order of the Court, or with prior written agreement of Class Counsel and CGU Counsel.

(c)     All funds held in the Escrow Account shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until the funds are distributed in accordance with this Agreement.

(d)     The Escrow Account is intended to be a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1.   The Escrow Agent, as administrator of the Qualified Settlement Fund within the meaning of Treasury Regulation §1.468B-2(k)(3), shall be solely responsible for filing tax returns for the Escrow Account and paying from the Escrow Account any Taxes owed with respect to the Escrow Account.   CGU agrees to provide the Escrow Agent with the statement described in Treasury Regulation §1.468B-3(e).   Neither the Defendant Released Parties, nor CGU Counsel, nor Class Representative, nor Class Counsel shall have any liability or responsibility of any sort for filing any tax returns or paying any Taxes

-10-

(as defined in Paragraph 4.3(e)) with respect to the Escrow Account.   Each Class Member's tax obligations with respect to his or her settlement, and the determination thereof, are the sole responsibility of the Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of an individual Class Member.

(e)   All (i) taxes on the income of the Escrow Account ("Taxes") and (ii) expenses and costs incurred in connection with the taxation of the Escrow Account (including, without limitation, expenses of tax attorneys and accountants) ("Tax-Related Costs") shall be timely paid by the Escrow Agent out of the Escrow Account.

(f)   The Settlement Amount and any Contingent Settlement Payment, together with any interest accrued thereon, will be used to make the following payments associated with the Settlement, in decreasing order of priority:

(1)   Taxes and Tax-Related Costs;

(2)   Any Administration Costs in excess of $200,000 to the extent such costs were not advanced by CGU or any other settling defendants;

(3)   Any amount in excess of $25,000 of any Service Award (as defined in Paragraph 4.6) approved by the Court under the circumstances described in Paragraph 4.6;

(4)   All Attorneys' Fees and Expenses approved by the Court;

(5)   Any payments to Class Members pursuant to Paragraphs 4.4(a)-(c); and

(6)   Any *cy pres* distribution pursuant to Paragraph 4.5.

4.4   *Distribution of Funds*.

(a)   Any money remaining from the Settlement Amount and any Contingent Settlement Payment, including any accrued interest thereon, after the payments set forth in

Paragraphs 4.3(f)(1)-(4) are made, shall be distributed as follows to Class Members who have

not excluded themselves from the Settlement Class, provided that the payment to each such

Class Member would be equal to or greater than $10.00:

 (1) The "Annuity Proportion" shall be calculated for each annuity by dividing

the premium paid for each annuity by the total premium paid for all annuities

assigned to Athene London Assignment Corporation where such annuities

remained in force as of October 2, 2013.

 (2) The "Annuity Recovery" shall be calculated for each annuity by

multiplying the Annuity Proportion by the Settlement Amount and any

Contingent Settlement Payment.

 (3) The "Individual Recovery" shall be calculated for each beneficiary of each

annuity by dividing the Annuity Recovery by the number of beneficiaries of that

annuity remaining in the Settlement Class.

 (4) The Settlement Administrator shall make a distribution to each Class

Member who has not excluded themselves from the Settlement Class in the

amount of that Class Member's Individual Recovery.

 (b) The Escrow Agent shall disburse the Settlement Amount as promptly as possible

after the Effective Date and, in any event, no later than two hundred-seventy (270) days after the

Effective Date.   If applicable, the Escrow Agent shall disburse any Contingent Settlement

Payment as promptly as possible after receipt and, in any event, no later than two

hundred-seventy (270) days after that receipt.

 (c) Class Members receiving settlement checks must cash them within one hundred

eighty (180) days of issuance.   If they do not do so, the settlement checks will be void.   This

limitation shall be printed on the face of each settlement check, bearing the notation "CASH PROMPTLY, VOID AND SUBJECT TO REDISTRIBUTION TO OTHER CLASS MEMBERS 180 DAYS AFTER ISSUE DATE."   Class Counsel and the Settlement Administrator are authorized to locate and/or contact any Class Member who has not cashed a settlement check within said time.

4.5   *Treatment of Undistributed Funds and Uncashed Checks*.   Any funds associated with checks that are not cashed within one hundred eighty (180) days of issuance shall be distributed to Class Members who did cash their checks, in an amount proportionate to each such Class Member's Individual Recovery, provided that the payment to each such Class Member would be equal to or greater than $10.00.   If this supplemental distribution to any Class Member would not exceed $10.00, then no supplemental check will be sent to that Class Member.   Any residual funds, and any funds that cannot be distributed to Class Members for any other reason, together with any interest earned thereon, and after the payment of any applicable taxes by the Escrow Agent, shall be donated to an appropriate charity or charities pursuant to a *cy pres* award of the Court.   Class Counsel shall make an application for a *cy pres* award of any such funds to the Court prior to the Fairness Hearing.   CGU Counsel and Class Counsel agree that Class Counsel will recommend to the Court that any such *cy pres* distribution be made to the Greater Boston Legal Services, unless the Settling Parties agree that Class Counsel will recommend to the Court that a *cy pres* distribution be made to another entity.

4.6   *Service Award*.   Any service award to Class Representative approved by the Court ("Service Award") shall be paid by CGU separate and apart from the Settlement Amount no later than thirty (30) days after the Effective Date.   In no event will CGU be required to pay in excess of $12,500 towards any Service Award.

4.7   *Administration Costs.*

(a)   Administration Costs up to $100,000 shall be paid by CGU separate and apart from the Settlement Amount.   CGU shall be responsible for a maximum of 50% of the Administration Costs with a maximum cap of $100,000.   In no event shall CGU pay more in Administration Costs than the Athene Defendants collectively pay.

(b)   If CGU's Administration Costs exceed $100,000 and in the event that CGU provides any up-front payment of such excess costs, then CGU shall be entitled to reduce the sum paid as the Settlement Amount by the amount of such excess Administration Costs.   To illustrate, if CGU pays Administration Costs totaling $150,000 (including excess costs of $50,000), CGU will be entitled to a $50,000 reduction in the amount required to be paid as the Settlement Amount, and will be required to pay only $4,950,000.

(c)   Class Counsel acknowledges that CGU does not have access to any current information that individually identifies the Class Members, including any contact or premium information for the Class Members.   Class Counsel represents and warrants that they have made arrangements to obtain this information from the Athene Defendants to assist in minimizing the Administration Costs through the provision of data in a manner and format as required by the Settlement Administrator to facilitate notice and claims administration.

(d)   Beginning thirty (30) days after the entry of the Preliminary Approval Order, and on every thirty (30) days thereafter, the Settlement Administrator shall provide Class Counsel and CGU Counsel with a detailed accounting of any Administration Costs expended to date. Every thirty (30) days, the Settlement Administrator shall issue an invoice to CGU in an amount of 50% of the Administration Costs incurred during the invoiced period, with the remaining 50% of the Administration Costs to be paid by other settling defendants.   CGU shall pay the amounts

-14-

invoiced by the Settlement Administrator up to $100,000.   Any disputes as to whether amounts billed by the Settlement Administrator are reasonable and necessary under this Agreement shall be resolved by the Court.

4.8     *Entire Obligation*.   In no event shall CGU be required to pay any amounts other than, or in excess of, the Settlement Amount of $5,000,000, any Contingent Settlement Payment, plus up to $100,000 in Administration Costs, plus up to $12,500 towards a Service Award.   In no event shall CGU be required to pay in excess of $5,112,500, unless any Contingent Settlement Payment is made pursuant to Paragraphs 4.2(b) or 4.2(c).   It is understood and agreed that CGU's obligations under this Agreement will be fully discharged by making the payments set forth in this Paragraph 4.8, and that CGU shall have no other obligations to Class Representative, the Settlement Class, the Settlement Administrator and/or the Escrow Agent, or Class Counsel under this Agreement or otherwise.

V.     **SETTLEMENT ADMINISTRATION**

5.1     The Settlement Administrator shall administer the Settlement subject to the supervision of Class Counsel, CGU Counsel, the Athene Defendants and the Court as circumstances may require.

5.2     Class Counsel shall cause a proposed class list containing all necessary information to effectuate this Agreement to be provided to the Settlement Administrator on or before the day this Agreement is filed with the Court.

5.3     The Defendant Released Parties and CGU Counsel shall have no responsibility for, interest in, or liability whatsoever, with respect to:

(a)     any act, omission, or determination of the Settlement Administrator, Class Counsel or designees or agents of Class Counsel, or the Athene Defendants;

-15-

(b)     the management, investment, or distribution of the Settlement Amount or any

Contingent Settlement Payment; or

(c)     the determination, administration, calculation, or payment of any claims asserted

against the Settlement Amount or any Contingent Settlement Payment.

5.4     The Settlement Administrator shall provide to Class Counsel and CGU Counsel,

no less than monthly, a full accounting of all expenditures made in connection with the

Settlement, including Administration Costs, and any distributions from the Settlement Amount

or any Contingent Settlement Payment.

5.5     The Settlement Administrator shall maintain reasonably detailed records of all

activities undertaken pursuant to this Settlement.   The Settlement Administrator shall provide

such information to the Court or as may be reasonably requested by Class Counsel or CGU

Counsel relating to administration of this Settlement.

5.6     If the Settlement Administrator receives requests for exclusion from Class

Members or other requests pursuant to Paragraph 3.4 regardless of whether such requests are

received before or after the submission deadline, Class Counsel or the Settlement Administrator

shall provide to CGU Counsel a copy thereof within seven (7) business days of receipt.

## VI.   RELEASES AND WAIVERS

6.1     Upon the Effective Date, in consideration for the relief provided by CGU in the

Settlement, Class Representative and all Class Members who do not exclude themselves from the

Settlement Class shall, on behalf of themselves and any other legal or natural persons and entities

who or which may claim by, through, or under them, including their executors, administrators,

heirs, assigns, privies, predecessors and successors, agree to fully, finally, and forever release,

relinquish, acquit, discharge and hold harmless the Defendant Released Parties from any and all

claims, demands, suits, petitions, liabilities, causes of action, rights, losses, damages and relief of

-16-

any kind or type, including, but not limited to, compensatory, exemplary, statutory, punitive, restitutionary, expert or attorneys' fees and costs, whether past, present, or future, mature or not yet mature, known or unknown, suspected or unsuspected, contingent or non-contingent, derivative, vicarious or direct, asserted or unasserted, and whether based on federal, state or local law, statute, ordinance, rule, regulation, code, contract, tort, fraud or misrepresentation, common law, violation of any state's or territory's deceptive, unlawful, or unfair business or trade practices, false, misleading or fraudulent advertising, consumer fraud or consumer protection statutes, or other laws, unjust enrichment, or any claim of any kind, in law or in equity, arising from, related to, connected with, or in any way involving the capital maintenance agreement dated on or about February 1, 2002, as amended and modified, the capital maintenance agreement dated on or about April 11, 2003, as amended and modified, any other capital maintenance agreements, and the subject matter of the Action, that are or could have been alleged, asserted, or described in the class action complaint filed in this Action on December 18, 2015, the Operative Complaint, the proposed second amended class action complaint filed in this Action on September 1, 2017, or any further amendment thereto (collectively, the "Released Claims").

   6.2    Upon the Effective Date, Class Representative and all Class Members who do not exclude themselves from the Settlement Class shall expressly waive and relinquish, and shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

-17-

6.3     Upon the Effective Date, Class Representative and all Class Members who do not

exclude themselves from the Settlement Class shall expressly waive and relinquish, and shall be

deemed to have expressly waived and relinquished, to the fullest extent permitted by law, any

and all provisions, rights, and benefits conferred by any law of any state or territory of the United

States, or principle of common law or international or foreign law, which is similar, comparable,

or equivalent to California Civil Code §1542.   Class Representative and Class Members may

hereafter discover facts in addition to or different from those which they now know or believe to

be true with respect to the subject matter of the Released Claims, but Class Representative and

all Class Members who do not exclude themselves from the Settlement Class shall expressly

fully, finally, and forever settle and release, and upon the Effective Date shall be deemed to have

fully, finally, and forever settled and released, any and all claims as described in these Releases

and Waivers, known or unknown, suspected or unsuspected, contingent or non-contingent,

whether or not concealed or hidden, which now exist, or heretofore have existed, upon any

theory of law or equity now existing or coming into existence in the future, including, but not

limited to, conduct which is negligent, intentional, with or without malice, or a breach of any

duty, law, or rule, without regard to the subsequent discovery or existence of such different or

additional facts.   Class Representative and Class Members who do not exclude themselves from

the Settlement Class acknowledge that the foregoing waiver and relinquishment were separately

bargained for and are key elements of the Settlement of which this release is a part.

## VII.   MONETARY PAYMENTS

7.1     Class Counsel intends to submit a Fee and Expense Application seeking an award

based on the value of the Settlement and the work performed.   CGU will not oppose the Fee

and Expense Application provided that the amount requested for an award of attorneys' fees in

the Fee and Expense Application does not exceed 30% of the total value to the Settlement Class

of this Agreement and any settlement agreement Class Representative may reach with any other defendant in this Action.   Any amount awarded by the Court in response to the Fee and Expense Application shall be paid by the Escrow Agent solely out of the Settlement Amount and shall be deducted from the Settlement Amount and paid to Class Counsel within ten (10) days of CGU's deposit of the Settlement Amount into the Escrow Account.   Notwithstanding any other provision of this Agreement, the allowance or disallowance (in whole or in part) by the Court or by any appellate court of the Fee and Expense Application shall not operate to terminate or cancel this Agreement, provide any basis for Class Counsel or Class Representative to terminate, cancel, or withdraw from the Agreement, and shall not be deemed a modification of a material aspect of the Agreement.   Class Counsel shall file with the Court their Fee and Expense Application at least forty (40) days after the entry of the Preliminary Approval Order..

     7.2     Class Counsel intends to submit an application for a Service Award payable to Class Representative in an amount not to exceed $25,000.   CGU will not oppose such an application.   Any amount awarded by the Court in response to the application for a Service Award shall be paid by CGU pursuant to Paragraph 4.6, or by the Escrow Agent out of the Settlement Amount, as applicable, within ten (10) days of CGU's deposit of the Settlement Amount into the Escrow Account.   Notwithstanding any other provision of this Agreement, the allowance or disallowance (in whole or in part) by the Court or by any appellate court of the application for a Service Award shall not operate to terminate or cancel this Agreement, provide any basis for Class Counsel or Class Representative to terminate, cancel, or withdraw from the Agreement, and shall not be deemed a modification of a material aspect of the Agreement. Neither Class Counsel's application for, nor Class Representative's entitlement to, a Service Award shall be conditioned in any way upon Class Representative's support for this Agreement.

Class Representative's support for this Agreement is not conditioned on the application for a Service Award or the amount of such Service Award requested therein, nor is his support for this Agreement conditioned on his receiving a Service Award in any particular amount or on his receiving any Service Award at all.

## VIII.   TERMINATION OF SETTLEMENT

8.1     If any of the following events occur, Class Representative or CGU may terminate this Agreement and the Settlement by serving on counsel for the opposing party and filing with the Court a written notice of termination within ten (10) business days of the event (or such longer time as may be agreed between Class Representative and CGU):

(a)     Class Representative and CGU agree to termination before the Effective Date;

(b)     In the event that the number of Class Members seeking exclusion from the Settlement Class exceeds an amount mutually-agreed upon by the Settling Parties;

(c)     The Court or any reviewing appellate court declines to enter or materially modifies the Preliminary Approval Order, the proposed Final Approval Order and Judgment, or the Agreement;

(d)     The Court or any reviewing appellate court declines to grant preliminary approval or final approval of the Settlement;

(e)     A reviewing appellate court reverses the Final Approval Order and Judgment, and the Settlement is not reinstated and finally approved without material change by the Court on remand; or

(f)     The Effective Date does not occur.

8.2     For purposes of this Agreement and this Paragraph 8.2, no order of the Court, or modification or reversal of such order by any reviewing appellate court, solely concerning the administration of the Settlement or the persons performing such administrative functions, or the

award or amount of any Attorneys' Fees and Expenses or Service Award shall constitute grounds for termination of the Agreement.

8.3    If for any reason this Agreement is terminated, disapproved, or fails to become effective, then:

(a)    The Settling Parties shall be deemed to have reverted to their respective status in the Action as of December 22, 2017, which shall then resume proceedings in the Court, and, except as otherwise expressly provided in this Agreement, the Settling Parties shall proceed in all respects as if this Agreement and any related orders had not been entered.

(b)    Paragraphs 2.4, 4.7, 5.3, 5.4, 5.5, 5.6, 8.3 and Section IX of this Agreement shall survive termination of the Agreement.

## IX.    NO ADMISSION OF WRONGDOING OR LIABILITY

9.1    CGU disputes the claims alleged in the Action and does not by this Agreement or otherwise admit any liability or wrongdoing of any kind.   This Agreement, and any of its terms, any agreement or order relating thereto, and any payment or consideration provided for herein, are not and shall not be construed as an admission by any of the Defendant Released Parties of any fault, wrongdoing, or liability.   CGU has agreed to enter into this Agreement solely to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could have been asserted in the Action.

9.2    Class Counsel and Class Representative believe that the claims asserted in the Action have merit, and have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement, the likelihood that Class Members would not pursue individual litigation to seek redress for violations of their interests, particularly considering the costs of pursuing such litigation, the risks associated with the continued

-21-

prosecution of this complex, costly, and time-consuming litigation, including certification of a class and upholding certification on appeal, the delay in providing benefits to the Class Members in the event that this Action was not settled, and the likelihood of success on the merits.   Class Counsel and Class Representative have concluded that the proposed Settlement set forth in this Agreement is fair, reasonable, adequate, and in the best interests of Class Members.

9.3    This Agreement, and any of its terms, and any agreement, exhibit, or order relating thereto, shall not be offered by any Settling Party to be received in evidence in any civil, criminal, administrative, or other proceeding, or utilized in any manner as a presumption, a concession, or an admission of any fault, wrongdoing, or liability on the part of any of the Defendant Released Parties.   However, nothing contained in this Paragraph 9.3 shall prevent this Agreement (or any agreement, exhibit, or order relating thereto) from being used, offered, or received in evidence in any proceeding to approve, enforce, or otherwise effectuate the Settlement (or any agreement or order relating thereto) or the Final Approval Order and Judgment.   This Agreement may be filed and used in other proceedings, where relevant, to demonstrate the fact of its existence and of this Settlement, including, but not limited to, the Defendant Released Parties' filing of the Agreement and/or the Final Approval Order and Judgment in any other action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, waiver, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

## X.    MISCELLANEOUS

10.1    *Recitals*.   The Settling Parties agree that the recitals are contractual in nature and form a material part of this Agreement.

10.2    *Binding Effect*.   This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Class Representative and CGU.

10.3   *Cooperation of Parties*.   The Settling Parties agree to cooperate in good faith with one another and with the Athene Defendants to prepare and execute all documents, to seek Court approval, defend Court approval, and to do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

10.4   *Obligation to Meet and Confer*.   Before filing any motion with the Court raising a dispute arising out of or related to this Agreement, the Settling Parties shall consult with each other and certify to the Court that they have consulted in good faith.

10.5   *No Disparaging Statements*.   The Settling Parties and their counsel shall make no statements to the press or make any other public statements (not including statements made in any judicial proceeding supporting approval of, or enforcement of the terms of, the settlement) describing this Settlement that disparage the Settlement, the Class Representative or the Defendant Released Parties or accuse the Class Representative or the Defendant Released Parties of wrongdoing.   Class Counsel may provide a factual summary of the allegations set forth in the Operative Complaint, but may not publicly suggest or state that the Settlement or its terms shows that those allegations were correct or that the Defendant Released Parties committed any wrongful act.   Nothing in this Agreement shall be construed to prevent Class Representative and Class Counsel from freely and frankly communicating with the Class Members.

10.6   *Exhibits*.   The exhibits to this Agreement are integral parts of the Settlement and are incorporated by reference as set forth herein.

10.7   *Entire Agreement*.   This Agreement is the entire agreement among the Settling Parties and it supersedes any prior agreements, written or oral, between the Settling Parties. This Agreement cannot be altered, modified or amended except through a writing executed by all Settling Parties.

-23-

10.8  *Construction of Agreement*.   This Agreement shall be construed to effectuate the intent of the Settling Parties to resolve all disputes encompassed by the Agreement.   All Settling Parties have participated in the drafting of this Agreement, and any ambiguity shall not be resolved by virtue of a presumption in favor of any Settling Party.   The headings herein are used for the purpose of convenience only and are not meant to have legal effect.   The Agreement was reached at arm's-length by the Settling Parties represented by counsel.   All time periods set forth in this Agreement will be computed as set forth in Rule 6 of the Federal Rules of Civil Procedure.

10.9  *Executed in Counterparts*.   This Agreement may be executed in counterparts, all of which shall be considered the same as if a single document had been executed, and shall become effective when such counterparts have been signed by each of the Settling Parties and delivered to the other Settling Party.   Counterpart copies of signature pages, whether delivered in original, by electronic mail in pdf format and/or by facsimile, taken together shall all be treated as originals and binding signatures.

10.10  *Notices*.   Unless otherwise provided herein, any notice, request, instruction, application for Court approval, or application for Court order sought in connection with the Agreement, shall be in writing and either (i) filed electronically with the Court or (ii) delivered personally or sent by certified mail or overnight delivery service, postage prepaid, or by electronic mail if the representative is domiciled outside of the United States, with copies by facsimile or electronic mail to the attention of Class Counsel or CGU Counsel (as well as to any other recipients that the Court may specify).   The Settling Parties may change the person(s) to whom such notices should be directed by giving notice pursuant to this Paragraph 10.10.   As of the date hereof, the respective representatives are as follows:

**For CGU:**

> **James R. Carroll**
> Skadden Arps Slate Meagher & Flom LLP
> 500 Boylston Street
> Boston, MA 02116
> Telephone:   (617) 573-4800
> Facsimile:   (617) 573-4822
> james.carroll@skadden.com
>
> **Gawaine Batchelor**
> Aviva Group Holdings Limited
> St. Helen's, 1 Undershaft
> London, EC3P 3DQ
> United Kingdom

**For Class Representative:**

> **Jerome M. Marcus**
> Marcus & Auerbach LLC
> 1121 N. Bethlehem Pike, Suite 60-242
> Spring House, PA 19477
> Telephone:   (215) 885-2250
> Facsimile:   (888) 875-0469
> jmarcus@marcusauerbach.com
> info@marcusauerbach.com

10.11   *Extensions of Time.*   The Settling Parties may agree, subject to the approval of the Court where required, to reasonable extensions of time to carry out the provisions of the Agreement.

10.12   *Governing Law.*   This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts without giving effect to any conflict of law provisions that would cause the application of the laws of any jurisdiction other than the Commonwealth of Massachusetts.

10.13   *Fees and Expenses.*   Except as otherwise expressly set forth herein, each Settling Party hereto shall pay all fees, costs and expenses incurred in connection with the

-25-

Action, including fees, costs and expenses incident to his or its negotiation, preparation or compliance with this Agreement, and including any fees, expenses and disbursements of its counsel, accountants, and other advisors.   Nothing in this Agreement shall require CGU to pay any monies other than as expressly provided herein.

10.14  *Retention of Jurisdiction*.   The Settling Parties shall request that the Court retain jurisdiction of this matter after the Effective Date and enter such orders as are necessary or appropriate to effectuate the terms of the Agreement.

10.15  *Authority*.   Class Counsel represents that they have authority to sign this Agreement on behalf of Class Representative, that Class Representative agrees to the terms of this Agreement, and that Class Counsel are seeking to protect the interests of the entire proposed Class.

Approved and Agreed to by and on behalf of Class Representative, John W. Griffiths, on

behalf of himself and the Settlement Class


Dated: ~~April~~, 2018              By: *Jerome Marcus*
      **May 1**                        Jerome M. Marcus

                                   By:_____
                                       Jonathan Auerbach



Approved and Agreed to on behalf of CGU


Dated: ~~April~~, 2018              By: _____
      **May 1**                        Name: Neil Harrison
                                       Title: Attorney for CGU